,RELAND
.ARSHALL
ICK" WAERS
. STAPP***
,. HENRY****
3 R. SCHWARTZ*
, W. WALTER
.A M. ATKINSON††
,T L. BROWN
J,. E L. WILLIAMS**
LAUREN M. FLETCHER
REBECCA S. PROCTOR*
MICHAEL E. AMASH
NATHAN S. TERRY
ROBERT E. FITZGERALD, III†
MICHELLE R. LEVINE
CARRIE C.M. REID†††
LORI D. ELROD
NATHAN J. HILL†††

* ADMITTED IN KS
** ADMITTED IN KS, MO, and IA
*** ADMITTED IN KS, MO, NE and IA
****ADMITTED IN KS, MO, NE, IA and D.C.
† ADMITTED IN KS, MO, and IL
†† ADMITTED IN KS, MO, AND NE
††† ADMITTED IN MO
ALL OTHERS ADMITTED IN KS and MO

**LAW OFFICES**
# BLAKE & UHLIG, P.A.
475 NEW BROTHERHOOD BLDG.
753 STATE AVENUE
KANSAS CITY, KANSAS 66101
913/321-8884
913/321-2396 TELEFAX

MISSOURI OFFICE
2500 HOLMES
KANSAS CITY, MO 64108
816/472-8883

NEBRASKA OFFICE
4151 SOUTH 9TH STREET
OMAHA, NE 68127
402/991-6801

JOHN J. BLAKE (1928-2006)
ROBERT L. UHLIG (1929-1981)
RICHARD B. THOMPSON (1952-1981)
ROBERT L. DAMERON (1951-2001)

1133.0042

June 8, 2010

Honorable Robert W. Pratt
Chief District Judge
Southern District of Iowa
United States Courthouse
123 East Walnut Street
Room 221
Des Moines, IA 50309

    Re:    Jenny Pitts v. Plumbers and Steamfitters Local 33
           Case No. 10-cv-0076-RP-RAW

Dear Judge Pratt:

        The Defendant, Plumbers and Steamfitters Local Union No. 33 ("the Union"), submits the following letter of supplemental authority, pursuant to the Court's Order stated at the hearing held on May 28, 2010. As requested by the Court, the Union is also submitting a copy of: (a) the collective bargaining agreement between it and employers recognizing the Union as the exclusive bargaining agent; and (b) the written "Hiring Hall Rules" governing the Union's operation of its exclusive hiring hall. [Note: The previous CBA has expired, and thus, the Union is also submitting a copy of the current CBA.]

## Exclusive Hiring Hall and LMRA § 301 jurisdiction

        The Union operates an "exclusive" hiring hall, under which the employer has agreed to hire all of its craft workers through a referral system maintained by the Union. This agreement is clearly stated in Section 4 of the CBA, which provides in relevant part:

    **SECTION 4.** Upon request the Union agrees to furnish plumbers, steamfitters, and pipefitters to the undersigned contractor, public utility corporations, or governing bodies that may have journeymen of either craft steadily employed, or for repair work only.

Honorable Robert W. Pratt
June 8, 2010
Page Two

> Contractors shall seek to hire qualified plumbers, steamfitters and pipefitters by
> calling the Union. Whenever a Contractor requires a plumber, steamfitter or
> pipefitter on any job, it shall notify the Local Union Office, either in writing or by
> telephone, stating the type of work to be performed and the number of employees
> required.
> All bargaining unit employees shall be referred to the Contractor by the Union.

(CBA, Section 4, p.4). In accordance with and pursuant to this exclusive referral agreement, the
Union has also agreed to written procedures (*see* enclosed "Hiring Hall Rules"), as well as
unwritten practices, which govern the specific referral rights of employees and the employers
requesting referrals. These practices and procedures are also part of the CBA, and as such, must
be considered in determining an employee's referral rights. *See Transportation-Communication
Employees Union v. Union Pacific R.R. Co.,* 385 U.S. 157, 161 (1966)(interpretation of a
collective bargaining agreement requires the court "to consider the scope of other related
collective bargaining agreements, as well as the practice, usage and custom pertaining to all such
agreements").

Because exclusive hiring hall arrangements can only arise under an agreement between an
employer and the union as the bargaining representative, the courts have asserted jurisdiction
under LMRA § 301 to adjudicate alleged violations of the hiring hall agreement. *See Laborers'
Int'l Union, Local 107 v. Kunco, Inc.,* 472 F.2d 456 (8th Cir. 1973)(§ 301 suit by union against
employer for refusing to hire through union hiring hall as agreed to in CBA); *International
Brotherhood of Elec. Workers, Local 545 v. Hope Elec. Corp.,* 293 F.3d 409, 418 n.9 (8th Cir.
2002)( in § 301 action, affirming contempt order against employer who failed to abide by order
require it to hire pursuant to the exclusive hiring hall provisions of CBA).

Section 301 jurisdiction also extends to suits brought by individual employees asserting
rights under a CBA, even though the employee is not a party to the CBA. *Smith v. Evening News
Ass'n,* 371 U.S. 195 (1961). The Supreme Court's holding in *Smith* was based in part upon
recognition that a uniform body of federal law must govern the application and interpretation of
collective bargaining agreements, and that this uniformity would be imperiled if it depended upon
the identify of the parties to the lawsuit. As the Court held: "To exclude these claims [by
individual employees] from the ambit of § 301 would stultify the congressional policy of having
the administration of collective bargaining agreements accomplished under a uniform body of
federal law." 371 U.S. at 200. Thus, it can make no difference that the hiring hall violations are
alleged here by an employee, rather than by a union or an employer. The preemptive force of §
301 requires that a "uniform body of federal law" governs any action based upon these rights and
duties that do not exist independent of the CBA.

Finally, the Union urges the Court to take note of the recent decision by the Eighth Circuit
Court of Appeals in *Holschen v. International Union of Painters & Allied Trades/Painters
District Council #2,* 598 F.3d 454 (8th Cir. 2010). In *Holschen,* the plaintiff alleged that his union
had "blackballed" him by not referring his name to prospective employers through the union's

Honorable Robert W. Pratt
June 8, 2010
Page Three

non-exclusive hiring hall. The court held that § 301 preempted plaintiff's state-law claims of interference with a valid business expectancy:

> If the CBAs gave Holschen something more than a mere hope of a business relationship with prospective employers, the Union's duty to refrain from interfering with his valid business expectancy would arise from the CBAs. Conversely, if the CBAs did not give rise to a valid business expectancy between Holschen and prospective employers, the Union would have no corresponding duty to refrain from interfering with such an expectancy. Either way, the resolution of Holschen's state law claim would depend upon the meaning of the CBAs, because the CBAs would have to be examined to determine both (1) the extent of the Union's duties to its members and (2) the scope of a union member's contractual or business relationship with prospective employers.

*Holschen*, 598 F.3d at 461.

The holding of *Holschen*, which was reached under a non-exclusive hiring hall arrangement, applies with even greater force when, as here, the Union operates an exclusive hiring hall. It is *only* by virtue of the provisions of the CBA, and the written and unwritten rules and practices that are part and parcel of the CBA, that Plaintiff can establish any right or expectation to the referrals in question. Unless Plaintiff can first establish such a contractual right, then it is a *non sequitor* for Plaintiff to claim that the Union "discriminated" against her with respect to its administration of that non-existent "right."

## Federal Preemption of State-Law Discrimination Claims

At oral argument held on May 28, 2010, the Court posed a question regarding the apparent permissibility of state discrimination laws in other contexts. The language of the Civil Rights Act of 1964 certainly makes clear that this statute, *standing alone*, has no preemptive effective upon state laws not in conflict with that federal anti-discrimination law. The savings provisions of the Civil Rights Act are contained in § 708 of Title VII, 42 U.S.C. § 2000e-7, and in § 1104 of Title XI, 42 U.S.C. § 2000h-4, which provide that "[n]othing *in this title*," § 708, and "[n]othing contained in any title *of this Act*," § 1104, preempts state anti-discrimination laws. Long before the enactment of the Civil Rights Act, however, Congress had completely foreclosed state remedies available against unions in the performance of their representational function of employees, who had been "stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). Moreover, Congress amended the national labor laws in 1947 to provide in LMRA § 301 for a uniform body of federal law to govern the interpretation of labor contracts. Although the Civil Rights Act makes clear that *it* does not preempt state remedies against discrimination, the language of its savings provisions does not thereby permit the conclusion that Congress returned to the States what it had already take from them through § 9(a) of the National Labor Relations Act of 1935, and LMRA § 301. Thus, although there is no preemption of state anti-discrimination laws under Title VII, preemption of such state statutes still exists under preexisting labor law preemption. *See, e.g., Davis v. Johnson Controls, Inc.*, 21 F.3d 866, 868 (8th Cir. 1994)(handicap discrimination lawsuit under Missouri

Honorable Robert W. Pratt
June 8, 2010
Page Four

Human Rights Act was preempted by § 301). To hold otherwise would require the Court to find that the Civil Rights Act effected an "implied repeal" of the earlier labor laws, which are not favored by the law. *See, e.g., Cantor v. Detroit Edison*, 428 U.S. 579, 597 n.37 (1976).

## Inapplicability of "*Garmon*" preemption analysis

At oral argument held on May 28, 2010, counsel for Plaintiff suggested to the Court that state discrimination laws are not preempted, since they are matters of particular "state interest." This argument relies upon a balancing of federal and state interests, which the Supreme Court has employed only in the context of "*Garmon*" preemption. *See Linn v. Plant Guard Workers*, 383 U.S. 53, 61-62 (1966). Under *Garmon* preemption, activity that is either "arguably prohibited" or "arguably protected" by the National Labor Relations Act is a matter that normally falls within the exclusive jurisdiction of the National Labor Relations Board. It is analytically distinct from other forms of labor law preemption, such as § 301 and DFR preemption. *See Lingle v. Norge Division of Magic Chef*, 486 U.S. 399, 409 n.8 (1988). Moreover, the Supreme Court has expressly held that in deciding questions of preemption under LMRA § 301, "the balancing of state and federal interests required by Garmon pre-emption is irrelevant, since Congress, acting within its power under the Commerce Clause, has provided that federal law must prevail." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 n.9 (1985)(§ 301 preempted state tort of bad faith handling of insurance claim).

In this case, the Union has not argued that Plaintiff's suit is subject to *Garmon* preemption. Thus, the balancing of state and federal interests required by that preemption doctrine is inapplicable here.

Yours truly,

Charles R. Schwartz

CRS/nmd
Enclosures

cc:     Paige Fielder, Esq., w/encs.
        Billy Mallory, Esq., w/o encs.



D 00001



# TABLE OF CONTENTS

Section 1
Effective Date and Notice for Change . . . . . . . . . . . 1

Section 2
Purpose of Agreement . . . . . . . . . . . . . . . 1

Section 3
Arbitration/Grievance . . . . . . . . . . . . . . . 1

Section 4
Furnishing Employees . . . . . . . . . . . . . . . 1

Section 5
Employer Working With Tools and
Management Rights . . . . . . . . . . . . . . . 4

Section 6
Pay Day . . . . . . . . . . . . . . . 8

Section 7
Holidays and Overtime Rate of Pay . . . . . . . . . 6

Section 8
Regular Work Day, 4 10-Hour Days,
Termination Notice, and Shift Work . . . . . . . . . 6

Section 9
Union Geographical Jurisdiction, Bargaining Unit
Recognition, Union Work Jurisdiction, and Refusal
to Work with Unqualified Persons . . . . . . . . . 7

Section 10
Working Conditions and Safety . . . . . . . . . . . 9

D 00002

# TABLE OF CONTENTS

Section 11
Equipment Used in Conjunction with Work of Trade . 10

Section 12
Travel, Subsistence, Mileage and Zones ......... 10

Section 13
Apprentice Ratio .................. 11

Section 14
Length of Apprentice Training ............... 12

Section 15
Reporting Pay .................. 12

Section 16
Subcontracting Work Covered by Agreement ..... 12

Section 17
Supervisory Ratio .................. 12

Section 18
Job Access by Business Manager
and/or Business Representative .......... 13

Section 19
Minimum Rate of Wages, Supervisory Rates of
Pay and Apprentice Rates of Pay ......... 13

Section 20
Tools .................. 14

Section 21
Workers' Compensation Insurance, Bond,
Certification of Default, and Standard Bond Form ....14

(ii)

# TABLE OF CONTENTS

Section 22
Employment of Journeymen Whose
Permanent Residence is Outside Jurisdiction ........ 16

Section 23
Appointment of Steward, Duties,
Discharge of Steward .................. 16

Section 24
Local Pension and National Pension Plans ........ 16

Section 25
Fund Deficiency .................. 20

Section 26
Education Plan .................. 20

Section 27
International Training Fund .................. 21

Section 28
Vacation Fund/Holiday Fund .......... 21

Section 29
Health and Welfare Plan .......... 22

Section 30
Industry Development Fund .......... 22

(iii)

D 00003

## TABLE OF CONTENTS

**Section 31**
U.S. Department of Labor Forms ........ 23
**Section 32**
Picketing and Crossing Picket Line ........ 23
**Section 33**
Equal Opportunity and Fair Employment ........ 23
**Section 34**
Employees Declining to Commence Work ........ 23
**Section 35**
Pre-job Conference ........ 24
**Section 36**
Helpers ........ 24
**Section 37**
Savings Clause ........ 25
**Section 38**
Drug Testing Program ........ 26
**Section 39**
Dues Check-off ........ 26
**Section 40**
UAPEC Check-off ........ 26
**Section 41**
Effective Dates and Length of Contract ........ 27
Signature Page ........ 29
Addendum A ........ 30

## AGREEMENT

**SECTION 1a.** This Agreement is made this 1st day of June, 2006, by and between the undersigned Employers, individually hereinafter called the "Contractors" and the Central Iowa Chapter of the Mechanical Contractors Association of Iowa, Inc. of Des Moines, Iowa and vicinity, and the Plumbers and Steamfitters Local Union No. 33, hereinafter referred to as the "Union".

**b.** If any change is contemplated in this Agreement by either party, notice must be given at least sixty (60) days prior to the expiration of the Agreement by registered, return-receipt mail.

**SECTION 2.** This Agreement is being entered into by and between the above named parties for the purpose of preventing strikes and lockouts and for the peaceful adjustment of any and all disputes, which may arise, and in the interest of the general public.

**SECTION 3a.** In the event of any dispute between parties of this Agreement as to the rights and/or obligations under this Agreement, the business manager of Local No. 33 and the executive director of the Central Iowa Chapter, MCAI, shall be immediately notified. Every effort possible shall be made by these individuals to settle the dispute before the subsequent provisions of this Article are invoked.

**b.** In the event that a dispute is not settled under the provisions of Section 3a., it shall be referred to the joint Grievance and Arbitration Board by registered, return-receipt mail.

A Grievance and Arbitration Board consisting of five (5) representatives of the Union and five (5) representatives appointed by the Mechanical Contractors Association of

Iowa, Inc., shall constitute the Grievance and Arbitration Board. The secretary of Local Union No. 33 shall be one of the Union members and act as secretary of the Board. One member of the MCAI appointees shall act as chairman of said Board.

c. Any employee or Employer covered under this Collective Bargaining Agreement having a grievance or the Union having a grievance shall submit their grievance in writing to the business manager of the Local Union or to the executive director of the MCAI chapter. Either such representative shall then notify the other representative and the Board shall meet within two (2) full working days of said notice.

d. The aggrieved party filing the grievance shall present its witnesses and evidence to the Board with the charged party having the opportunity to then present its evidence and witnesses. Upon completion of all evidence and hearing, the Board shall go into executive session and make its determination. The Board shall determine all grievances in compliance with the terms and conditions of this Agreement. A decision or award shall require a majority of the Board in favor of said decision and award, and shall require at least one (1) member of the Board voting in favor of the same to be from the Union appointees, and at least one (1) from the Association appointed members.

e. The Board shall render its decision within five (5) working days of the date and time of the completed hearing. Said award, if by a majority, shall be final and binding upon the parties for the term of this Agreement.

1. In the event a grievance is not satisfactorily settled by the Joint Grievance Committee within five (5) working days after having been first considered by such Joint Grievance

-2-

and Arbitration Board, the Union or the Association may elect to submit such grievance to impartial arbitration by notifying the other party and the effected Employer in writing to that effect. The Union and the Association may mutually agree to a permanent impartial arbitrator. If they have not agreed to a permanent arbitrator, the Union and the Association shall thereupon select a disinterested person to act as impartial arbitrator for such grievance. If the Union and the Association cannot agree upon such impartial arbitrator within five (5) working days after a grievance has been referred to impartial arbitration, then such impartial arbitrator shall be selected from a list of five (5) arbitrators to be furnished by the Federal Mediation and Conciliation service; said selection to be effected by the parties alternatively striking names from such list. The person whose name remains on the list after four (4) having been so stricken shall be the impartial arbitrator. Such selection of the impartial arbitrator shall be effected within five (5) days (excluding Saturdays, Sundays, and holidays) after receipt of the list from the Federal Mediation and Conciliation Service.

2. The decision or award of the impartial arbitrator shall be final and binding upon all parties. The impartial arbitrator shall have no authority to add to, subtract from, or modify the terms of this Agreement.

f. Each party to this Agreement shall bear the expenses of preparing and presenting its own case. The fees and expenses of the arbitration shall be borne equally by the parties hereto. Any stenographic record or transcript shall be paid for by the party or parties ordering the transcript.

g. Any time limits provided for in the grievance and arbitration procedure set forth in this Article may be waived or

-3-

D 00005

extended by mutual agreement between the Union and the Association.

SECTION 4. Upon request the Union agrees to furnish plumbers, steamfitters, and pipefitters to the undersigned contractor, public utility corporations, or governing bodies that may have journeymen of either craft steadily employed, or for repair work only.

Contractors shall seek to hire qualified plumber, steamfitters and pipefitters by calling the Union. Whenever a Contractor requires a plumber, steamfitter or pipefitter on any job, it shall notify the Local Union Office, either in writing or by telephone, stating the type of work to be performed and the number of employees required.

All bargaining unit employees shall be referred to the Contractor by the Union.

SECTION 5a. A contractor, being a member of the United Association, of the undersigned firm will be permitted to work on any and all work for the undersigned firm.

b. Management Rights: The management and the direction of the work force, include the right to hire, promote, suspend, discharge, transfer, and layoff because of lack of work. The management of the Employer's business shall include, but not by way of limitation, the right to decide the size, number, and location of construction jobs to be performed and the extent of the work to be performed thereon, etc. The

-4-

Employer will advise the Union as to the supervisors to whom employees are responsible from time to time. Nothing herein contained shall abridge any of the terms of this Agreement nor shall management discriminate in any way against any of the employees of the company covered by this Agreement.

SECTION 6. All employees shall receive their pay not later than 4:30 p.m on designated pay day, and the pay shall be delivered by US Mail to an address of the employee's choosing, or by electronic deposit to a bank account of the employee's choosing, or by check in hand, at the option of the employee. Any employee receiving pay by electronic deposit shall receive an itemized accounting of the pay deposited on his/her behalf no later than 4:30 p.m. on designated pay day, either by US Mail or by delivery in hand to the employee. Employers shall make paychecks and/or itemized pay accounting available for employees to pick up at the employer's principal place of business before or after working hours on pay day. Customary pay day shall be Friday of each week. The time records for the week shall not be turned into the payroll department of the Employer earlier than 12:00 midnight on Tuesday with the following Friday to be the customary pay day.

In no case shall more than three (3) days pay be held back in any one payroll week.

In the event that an employee does not receive his/her pay on time, or the pay is incorrect, the Employer shall correct such deficiency no later than Tuesday of the week following the Friday pay day (or no later than two full business days after pay day). Any deficiency not corrected by the aforementioned deadline shall result in a penalty of one (1) hour straight-time wages, without fringe benefits, to be paid

-5-

D 00006

to the employee by the Employer for every day the correc-
tion is late beyond the deadline.

SECTION 7. Sundays, New Year's Day, Memorial Day,
Fourth of July, Labor Day, Thanksgiving Day, the Friday after
Thanksgiving Day, and Christmas will be paid at the rate of
double time. On regular work-week days outside the nor-
mal working hours and on Saturdays, the pay will be at one
and one-half times the regular rate. When any of the above
named holidays fall on a Saturday, the Friday preceding the
holiday will be celebrated as such and the double time rate
shall prevail; if the holiday falls on a Sunday, the following
Monday will be celebrated as such and the double time rate
shall prevail. It is also agreed that no such work will be per-
formed on Labor Day, except to protect life and property.

It is further understood that working hours for the entire
period worked are to be considered to have been worked
on the day on which the work began, regardless of starting
and stopping times before or after midnight.

SECTION 8a. Eight (8) hours shall constitute a day's
work. The normal work day shall be from 7:00 a.m. to 3:30
p.m. or from 8:00 a.m. to 4:30 p.m. This is to be understood
that employees are to put in eight (8) hours actual labor
(including pick-up time) and to be on the job and ready to
work not later than 7:00 a.m. or 8:00 a.m., except when
reporting to the shop.

b. Working hours may be from 7:00 a.m. to 5:30 p.m. if
mutually agreeable between the majority of the employees
affected and the Employer. Such work shall be paid at the
straight time rate Monday through Friday, not to exceed
forty (40) hours. When a 10-hour per day, 4-day workweek
is established the schedule must be set for either Monday
through Thursday or Tuesday through Friday, with all

-6-

employees working the same schedule, and the schedule
will remain intact for the remainder of the project, or until
such a time as the normal 8-hour per day, 8-day workweek
is reestablished. On a Monday through Thursday schedule,
Fridays are overtime days with no exceptions. On a Tuesday
through Friday schedule, Mondays are overtime days with
no exception.

c. At the time of termination the Employer shall supply, in
writing, a notice of termination with reason for such termi-
nation to the employee when terminated. A copy of this ter-
mination notice shall be forwarded to the business office of
this Local Union. Upon termination, employee shall be paid
in full.

d. Shift work can be performed after or before the regu-
lar working hours on jobs where the work cannot be done
during regular working hours. Shift premium shall be ten
(10) percent above the base rate of pay. A Shift shall be
eight (8) hours. No more than one (1) shift can be per-
formed by one (1) employee in any twenty-four (24) hour
period without overtime pay. This section is not applicable
to service work.

e. The employer shall be allowed to establish a family
and medical leave policy for all employees covered by this
agreement. Such a policy shall conform to state and federal
law. The Health and Welfare Board of Trustees will address
the issues of health care coverage as they see fit in confor-
mance with the law.

SECTION 9a. The Union hereunder is recognized as the
bargaining agent for all plumber, steamfitter, and pipefitter
employees of the Employer hereunder, within an area which
includes the following counties in Iowa: Polk, Boone, Story,
Greene, Guthrie, Dallas, Jasper, Poweshiek, Adair, Madison,

-7-

D 00007

Warren, Marion, Adams, Union, Clarke, Lucas, Taylor, Ringgold, Decatur, Marshall, Wayne, Hamilton, Webster, Calhoun, Pocahontas, Humboldt, Palo Alto, Emmet, Kossuth, Davis, Wapello, Jefferson, Van Buren, Keokuk, Appanoose, Mahaska, Monroe, Cerro Gordo, Floyd, Franklin, Hancock, Mitchell, Winnebago, Worth, Wright, Lyon, Osceola, Dickinson, Sioux, O'Brien, Clay, Plymouth, Cherokee, Buena Vista, Woodbury, Ida and Sac. The area also includes Dakota and Dixon Counties in Nebraska, and Union County in South Dakota.

Inasmuch as the Union has submitted proof, and the employer is satisfied, that the Union represents a majority of its employees in the bargaining unit described herein, and the Union has demanded recognition in accordance with Section 9(a) of the NLRA, the Employer recognizes the Union as the exclusive Section 9(a) Collective Bargaining Representative on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses the status as the employees' exclusive representative as the result of an NLRB election request by the employees.

b. The Union and Employees hereby recognize the Central Iowa Chapter, Mechanical Contractors Association of Iowa as the sole and exclusive bargaining representative for all its Employer members and for those non-member contractors that have furnished the Association with collective bargaining authorizations.

c. Both parties of this Agreement will recognize the craft classification of work heretofore mutually understood and agreed upon by the parties as belonging to the plumbers, steamfitters, and pipefitters craft, or that has historically been recognized as such. Such other classifications as have

-8-

been or may hereafter be awarded to the plumbers, steamfitters, or pipefitters craft by the National Plan for Settlement of Jurisdictional Disputes in the Construction Industry shall be covered by this Agreement. The work jurisdiction of plumbers, steamfitters and pipefitters shall include, but not be limited to, that included in Addendum "X" of this Agreement.

d. It shall not be a violation of this contract and shall not be cause for discharge, reprimand or discipline under this contract if any employee or employee of the Employer refuse to work and endure risks and hazards involved in working with persons not qualified or skilled in their trade.

e. During the term of the Agreement the Union agrees that there will be no strikes, picketing, or work stoppages of any type against signatory contractors. The Employer agrees that there will be no lockout during the term of the Agreement. Nothing in this clause excludes the Union from strike or picketing in the event that an Employer fails to abide by a decision arrived upon through the grievance procedure.

The Union, however, specifically reserves the right to strike an Employer if he/she is declared delinquent in payment of Health and Welfare, Pension, or Apprenticeship contributions, or if an Employer refuses to submit to an audit on behalf of any of the foregoing contributions on either a regular or special audit basis.

SECTION 10. The employees shall be aware of the provisions of the Occupational Safety and Health Act of 1970 (and revisions thereof), as well as the Federal Construction Safety Standards and the Right-to-Know law. The employees shall conform to all directives and provisions of these laws,

-9-

D 00008

Noncompliance can be reason for termination. The above requirements shall also apply to the State Occupational Safety and Health Act.

SECTION 11a. Equipment used on building and construction work in conjunction with the work of the trade, as a time and labor-saving device, shall be operated by employees covered by this Agreement.

b. In cases where it is practical and cost effective, and at the option of the Employer to limit his or her exposure by installing limited amounts of pipe insulation, it is agreed that this work shall be performed by members of the United Association. This section is in no way designed to dismantle the use of Heat and Frost Insulators and Asbestos Workers for work of a like manner.

SECTION 12a. On work outside the jurisdiction set forth in Section 9a., one (1) journeyman shall act as foreman of each individual craft and shall receive the Des Moines scale of wages except where wages are higher, then he/she shall receive the wages paid in that jurisdiction. All work out of the jurisdiction shall comply with the conditions at such place.

b. Employees working within a sixty (60) mile radius from the center of Des Moines shall not be allowed traveling allowance or car expenses. Said area to be known as "free zone". An additional zone, which is a radius between sixty (60) and eighty (80) miles shall be established, and shall be known as the "intermediate zone".

c. Employees sent to work outside the sixty (60) mile radius, and within an eighty (80) mile radius, shall receive per-diem equal to one (1) hour of the straight time journeyman wage rate. Employees sent to work outside the eighty (80) mile radius or outside the geographical jurisdiction of

-10-

Local #33 shall be reimbursed for actual travel time at the straight time rate of wages and actual amount of expenses incurred.

d. Employees driving their own car outside the sixty (60) mile free zone, shall receive the maximum rate per mile allowed by the Internal Revenue Service either from employee's home or from the Employer's permanent established place of business, whichever is the shorter distance.

The mileage rate shall be paid per mile per day for the employee's transportation. When traveling by other than car, first class transportation shall be furnished by the Employer. Employees shall use no vehicle of any description (unless furnished by the Employer) during working hours.

e. Employees whose permanently established place of business is in any other city or town than Des Moines, in the counties covered in Section 9 of this Agreement, shall use the center of said city or town to arrive at the determinations set forth in this Section.

f. A sixty (60) mile free zone and a sixty (60) to eighty (80) mile intermediate zone shall be established around each town in the jurisdiction covered by this Agreement, and each employee with residence in these zones shall be governed by same. The free zone and the intermediate zone for all of Section 12 shall be based on the center of cities and towns covered by this Agreement.

g. Employees whose permanently established place of business is outside the jurisdictional boundary of Local No. 33 shall use the center of Des Moines, Iowa to determine traveling expenses and mileage.

SECTION 13. One (1) apprentice will be allowed to a shop, providing that from one (1) to four (4) journeymen are

-11-

D 00009

steadily employed. Two (2) apprentices will be allowed to a shop, providing that five (5) to eight (8) journeymen are steadily employed. There will be no maximum placed on the number of apprentices placed in any shop.

The Union agrees that first year apprentices will be provided to the contractor within one (1) week after request.

SECTION 14. All apprentices shall serve five (5) years and work in compliance with the apprenticeship standards as adopted by the Local Joint Apprenticeship Training Committee.

SECTION 15. Any Employee reporting for work, regardless of the time of day, shall receive no less than two (2) hours pay.

SECTION 16. In the event the Employer subcontracts any work covered by this jurisdiction of the bargaining agent hereunder, the subcontractor shall work under the terms and conditions of this Agreement and it is the Employer's responsibility to enforce this provision of this Agreement. In the event that the employees of the subcontractor do not work under the terms and conditions of this Agreement, the bargaining agent shall have the right to full economic recourse (including strike) against the Employer.

SECTION 17. Any journeyman having from three (3) to ten (10) employees working under his/her supervision shall receive the foreman's rate of pay. An additional foreman shall be provided for every ten (10) employees above the first ten (10), and at such time a general foreman shall be appointed and receive the general foreman's rate of pay. All foremen will be under the direct supervision of a general foreman. Any journeyman acting in the capacity of inspector in his/her craft shall be paid the foreman's rate of pay.

– 12 –

SECTION 18. No journeyman or apprentice will be obligated to work on any job where the business manager and/or business representative does not have access at all times.

SECTION 19. Effective June 1, 2006 through May 31, 2007, the total wage package shall increase by $1.35 per hour with distribution to be determined. The Wage Determination Sheet will be jointly agreed upon and distributed by M.C.A.I. and Local #33.

The total wages for the period effective June 1, 2007, through May 31, 2008, shall be increased by $1.40 per hour, with distribution to be determined.

The total wages for the period effective June 1, 2008, through May 31, 2009, shall be increased by $1.45 per hour, with distribution to be determined.

Foreman - Eight percent (8%) per hour above journeyman base rate of pay.

General Foreman - Thirteen percent (13%) per hour above journeyman base rate of pay.

Apprentices: Percentage of journeyman minimum rate of pay.

| | |
|---|---|
| 1st six months | 45% |
| 2nd six months | 45% |
| 3rd six months | 50% |
| 4th six months | 55% |
| 5th six months | 60% |
| 6th six months | 65% |
| 7th six months | 70% |
| 8th six months | 70% |
| 9th six months | 75% |
| 10th six months | 80% |
| | 85% |

– 13 –

D 00010

**NOTE:** First year apprentices will have no fringe benefit contributions made except for the contribution to the Health and Welfare Fund, fifty (50) percent of the contribution to the U.A. National Pension Fund and a deduction to the Holiday Fund equal to the percentage rate his/her pay is based upon. After the first year period, apprentices in addition to the Health and Welfare contribution and the fifty (50) per-cent National Pension contribution, will have contributions made to the Local Pension Fund and a deduction for the Vacation and Holiday Funds equal to the percentage rate his/her pay is based upon. When an apprentice's pay rate exceeds fifty (50) percent, the contribution to the U.A. National Pension Fund shall be equal to the percentage of his/her pay rate.

**SECTION 20.** All tools shall be furnished by the Employer, except the following hand tools shall be fur-nished one time by the Employer, and maintained by the employee.

1 - Hand box or equivalent
1 - Torpedo level
1 - 25 ft retractable tape
1 - 6' folding rule
1 - Channel lock type pliers
1 - 4 in 1 screwdriver set
1 - 6" Crescent wrench
1 - 1 lb hammer

**SECTION 21a.** All contractors must carry Workers' Compensation Insurance, and pay Social Security and Unemployment Insurance regardless of the number of employees employed. The Union and the Contractors shall be allowed to establish a collectively bargained Workers'

-14-

Compensation Insurance Plan for all employees covered by this Agreement.

b. The Employer subject to this Agreement shall furnish a bond from a bonding company licensed to do business in the state of Iowa, in the amount of twenty-five thousand dol-lars ($25,000), or in the amount deemed appropriate by the Board of Trustees, to guarantee the payments required in this Agreement of Vacation pay, Holiday Pay, Health and Welfare, Pension, Education Fund, Union Dues checkoff, Industry Development Fund, and any other fringe benefits or other monetary obligations except wages paid in hand to the employee.

All Employers employing employees covered by this Bargaining Agreement shall at the execution of this Agreement, furnish satisfactory evidence of the bond to the Local Union and to the Trustees of the Funds. All other Employers to whom this Agreement and provisions hereof shall become applicable shall furnish said bond within fif-teen (15) days from the time of employment of any employ-ees covered under the terms and conditions of this Agreement. The bond shall be for the period of this Agreement.

Each employee, Trust Fund or other person or entity hav-ing a claim against any Employer under the provisions of this Agreement, shall notify the business manager of Local Union No. 33, in writing, of the facts and circumstances of such unpaid obligation. After verification of the indebted-ness, he/she shall report same to the respective Trustees who shall process a certification of default to the Surety Company for payment under the terms of the Surety Bond and remit the funds received from the Surety Company to the Trust Accounts of the respective employees.

-15-

D 00011

c. A standard bond form shall be furnished to the Employer employing employees covered by this Bargaining Agreement and said forms shall be furnished by the Local Union.

SECTION 22. When working or installing any work within the jurisdiction covered by this Agreement, if employees with permanent residence within the jurisdiction hereto are available, any Employer hereunder shall employ no more than one (1) journeyman whose permanent residence is outside the jurisdiction covered herein.

SECTION 23. The first journeyman to go to work with the tools on a job shall be temporary steward thereon, subject to the approval of the business manager. The business manager will inform the contractor in writing the name of the steward. Foreman shall not be allowed to act as steward.

The steward on the job shall be allowed a reasonable amount of time to attend to his/her duties during the legal working hours and shall be notified concerning any lay-off of employees at the earliest possible time.

When there is work remaining on the job for one or more employees, which the steward on said job is qualified to perform, reduction in force shall not be good cause for discharge of such steward and such steward shall not be discharged without the mutual approval of the business manager and the Employer.

SECTION 24. Local Pension Plan: The Employers subject to this Agreement shall pay into the Pension Plan now in effect for the employees covered under this Agreement, as per the Wage Determination Sheet per hour worked by each of said employees. Such sums shall be paid to the administrator at least monthly and shall be due in the Local #33

Fund Office on or before the 20th day of the month following the month such contributions were earned.

b. National Pension Plan: The undersigned Employer and Union agree that the Employer shall make pension contributions to the National Pension Fund in accordance with the terms of this Agreement on behalf of those employees who are covered by the National Pension Fund pursuant to the Collective Bargaining Agreement.

1. a) Commencing with the first (1st) day of June, 2006 and for the duration of the current Collective Bargaining Agreement between the parties, and any renewals or extensions thereof, the Employer agreed to make payments to the Plumbers and Pipefittern National Pension Fund for each employee who is in each classification listed below in accordance with the Collective Bargaining Agreement.

| CLASSIFICATION | AMOUNT | EFFECTIVE DATE |
|---|---|---|
| Journeyman | as per Wage Determination Sheet | June 1, 2006 |
| Apprentice | as per Wage Determination Sheet | June 1, 2006 |

Any classification of employees who are excluded from the plan pursuant to good faith bargaining and for whom contributions are not required shall not participate in the Plan. Persons in such excluded classifications shall not be considered "Employees" for purposes of the Plan and this Standard Form of Participation Agreement.

b) The Employer shall make contributions set out in subparagraph 1(a) for each hour, or portion thereof, for which an employee is paid or entitled to payment for performance of duties for the Employer. (Each overtime hour shall be

D 00012

counted as one regular hour for which contributions are payable).

c) Contributions set out in subparagraph (a) above shall be paid starting with the employee's first day of employment in a job classification covered by the Collective Bargaining Agreement.

d) The Employer shall continue contributions to the Fund for any compensated employees who were previously covered by the Fund as members of the bargaining unit, and who are continuing to perform work of the type covered by the Collective Bargaining Agreement for at least half of their hours with the Employer. It is understood that the Employer may not make contributions on behalf of an employee who owns, or whose spouse owns, 10% or more of the corporation, unless it signs and abides by a participation agreement covering such owner employee. It is also agreed that the Employer shall not make contributions to the Fund on behalf of any employees other than those specified herein.

The payments to the Pension Fund required above shall be made to the "Plumbers and Pipefitters National Pension Fund", which was established under an Agreement and Declaration of Trust, dated July 23, 1968 and restated December 13, 1978. The Employer, by signing this Standard Form of Participation Agreement, or by signing a Collective Bargaining Agreement providing for participation in the Plumbers and Pipefitters National Pension Fund, agrees to be bound by all the terms and conditions of the restated Agreement and Declaration of Trust. Any Employer so adopting the restated Agreement and Declaration of Trust hereby ratifies, accepts and designates as its representatives the Employer Trustees then serving as such and authorizes said Employer Trustees to designate additional

-18-

Employer Trustees and successor Employer Trustees in accordance with the terms and conditions thereof, and authorizes the Trustees to adopt amendments to the restated Agreement and Declaration of Trust. The Employer hereby acknowledges receipt of a copy of the restated Agreement and Declaration of Trust in effect when this Agreement is signed.

3. It is agreed that the Pension Plan adopted by the Trustees of the said Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

4. It is agreed that all contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to retain an accountant or accounting firm to perform payroll audits of the Employer to determine whether the correct amount of contributions have been made on behalf of all employees covered by the plan.

5. If an Employer fails to make contributions to the Pension Fund within twenty (20) days of the end of the month during which the work was performed, the Union shall have the right to take whatever steps are necessary to secure compliance, any provision of the Collective Bargaining Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs and expenses for collecting the payments due, together with the attorney's fees, interest on the unpaid contribution of 12% per annum and liquidated damages of 10% of the unpaid contributions. The Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure or the "no-strike" clause provided under the Collective Bargaining Agreement.

-19-

D 00013

6. The parties agree that this Participation Agreement shall be considered a part of the Collective Bargaining Agreement between the undersigned parties.

7. The expiration date of the present Collective Bargaining Agreement between the undersigned parties is May 31, 2009. Copies of the Collective Bargaining Agreement and all renewal or extension agreements will be furnished promptly to the Pension Fund Office, and if not consistent with this Participation Agreement, can be used by the Trustees as the basis for termination of participation of the Employer.

SECTION 25. Fund Deficiency: Should a determination be made that there exists or will exist an accumulated funding deficiency for a particular trust under the provisions of the Employee Retirement Income Security Act (ERISA), the parties agree to request the Trustees of that particular trust to reduce the benefits in order to correct such under funding providing, however, that if such reduction is not accepted by the Trustees of such trust within thirty (30) days, or would be inadequate to correct the under funding, or is not approved by the Secretary of Labor, the parties hereto shall meet and arrive at an immediate adjustment of the hourly wage rates in this Agreement, in order to correct such funding deficiency in the Local 33 Pension Plan or the Local 33 Health and Welfare Plan. In no event shall the total wage and benefit package be increased for the duration of this contract.

SECTION 26. Each and every Employer subject to this Agreement shall pay and contribute an amount equal to two percent (2%) of the base hourly wage rate for each member of the bargaining unit for each and every hour worked by each and every helper, apprentice, and journeyman cov-

– 20 –

ered by this Agreement into a Trust Fund to be known as the Education Fund. The contribution rate for all helpers to the Education Fund shall be calculated on the base hourly rate for a first six month apprentice. This amount may be increased by the contractors after a review and recommendation from the Joint Apprenticeship and Training Committee. Said payments shall be subject to the provisions and conditions of said Education Fund. Such sums to be paid to the Trustees at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

SECTION 27. Each and every Employer subject to this Agreement shall pay and contribute $.05 per hour for each member of the bargaining unit for each and every hour worked by each and every helper, apprentice and journeyman covered by this Agreement into the International Training Fund as per the Contribution Collection Agreement set forth for such Fund. Such sums to be paid to the Trustees at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

SECTION 28. The Employers subject to this Agreement shall pay to the Plumbers and Steamfitters Vacation Fund per the Wage Determination Sheet for each hour worked by each employee covered by this Agreement and shall pay to the Plumbers and Steamfitters Holiday Fund as per the Wage Determination Sheet for each hour worked by each employee covered by this agreement. Such sums to be paid to the administrator at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such monies were earned. Holidays covered by the Holiday Fund are New Year's Day,

– 21 –

D 00014

Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, the Friday after Thanksgiving Day, and

Christmas. When the above named holidays fall on a Saturday the Friday preceding the holiday will be celebrated as such; if the holiday falls on a Sunday the following Monday will be celebrated as such.

No employee may receive Vacation Benefits under such plan for any time when Local Union No. 33 is on strike.

SECTION 29. The Employers subject to this Agreement shall pay into the Health and Welfare Insurance Plan now in effect, for the employees covered under this Agreement, as per the Wage Determination Sheet for each hour worked by each of said employees. Such sums shall be paid to the administrator at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

SECTION 30a. Each and every Employer subject to this Agreement shall pay and contribute as per the Wage Determination Sheet for each and every hour worked by each and every helper, apprentice, and journeyman covered by this Agreement into a Trust Fund to be known as the Industry Development Fund. The contributions shall be reported on forms supplied by, and paid to the Trustees or the administrator monthly not later than the 20th day of the month following each month for which such contributions accrue. All payroll periods ending in the month shall constitute a month's report. The Industry Development Fund shall be administered in accordance with an Agreement and Declaration of Trust and shall be used for the purpose of promoting the good and welfare of the Industry in accordance with the purposes set forth in the declaration.

- 22 -

b. It is agreed that no fund shall be used to violate the terms of this Agreement.

SECTION 31. The Employers subject to this Agreement shall provide to the Union, on a quarterly basis, "Report of Construction Contractor's Wage Rates" for any project completed by the Employer during the previous quarter having a value of $80,000 or more. Reports will be made on U.S. Department of Labor forms provided by the Union, and they will be due in the Union Office no later than the 20th of the month following the end of each quarter of the calendar year. All reports will be forwarded to the U.S.Department of Labor by the Union to be used for the establishment of the Federal Prevailing Wage Rate.

SECTION 32. It shall not be a violation of this contract and shall not be cause for discharge, reprimand, or discipline under this contract if any employee or employees refuse to cross or work behind a picket line or refuse to work on a job where an injunction has been granted prohibiting picketing on such job.

SECTION 33. The parties to this Agreement acknowledge that they are subject to state and federal law regarding Equal Opportunity and Fair Employment and therefore, will jointly take the necessary steps to comply with these laws to assure, within the scope of this Agreement, compliance with Equal Opportunity and Fair Employment practice laws and agree that the employment, referral or selection of all employees shall be on the basis of qualifications without regard to age, color, race, sex, religion, national origin or ancestry.

SECTION 34. As a primary working condition, the employees herein reserve the right to decline to commence

- 23 -

D 00015

work where the signatory contractor has mis-assigned the work covered by the United Association.

SECTION 35. It is agreed that in order to avoid necessary disputes as to the above, the Employer agrees to hold a pre-job conference with a representative of Local Union No. 33. Such conference shall be held whenever the total value of all work on any job coming under the jurisdiction of members of the United Association exceeds $10,000.

SECTION 36. This Section is solely intended to place signatory contractors in a competitive position to successfully bid work that they are not now performing, and will not be implemented in such a manner as to deprive Local Union members of job opportunities.

*Assigned helpers:* One (1) helper will be allowed to a shop, providing that from one (1) to four (4) journeymen are steadily employed. Two (2) helpers will be allowed to a shop, providing that five (5) to eight (8) journeymen are steadily employed. Thereafter, one (1) helper will be allowed for every four (4) journeymen. The Assigned Helpers may be worked on any project at the discretion of the Employer.

*Project Helpers:* On a project-by-project basis, the business manager and the contractor may or may not enter into more favorable terms and conditions of employment other than those contained in this Working Agreement. This section shall be executed and govern the hiring of employees for a project or for a classification of work where non-signatory contractors are anticipated to bid. The contractor shall employ at least one (1) journeyman member of the Local Union for the project or classification of work with the balance of the employees being employed as dictated by the project or classification of work involved, an average of one (1) helper per journeyman can be used.

-24-

All helpers will receive wages of from thirty-five percent (35%) to forty-five percent (45%) of the journeymen base rate of pay, and contributions to a Health and Welfare plan approved by the Health and Welfare Trustees. Helpers will also receive contributions to the Education Plan as outlined in Section 26 of this Agreement, and contributions to the Industry Development Fund as outlined in Section 29a. of this Agreement. No other fringe benefits will be paid.

All helpers shall be referred by the Local Union. No helpers will be referred if first year apprentices are available for work. These helpers will come off the Joint Apprentice Committee List, when available. It is required that all helpers be listed on the monthly reporting form.

Helpers will not be allowed to perform the following work: pipe welding in any form, laying out of work in any form, testing, balancing, startup, or directing the work force. Helpers must be under the direct supervision of a journeyman at all times while performing work covered under the jurisdiction of this Agreement.

This section shall be in full force and effect for the duration of the project or work involved.

SECTION 37. If any provision of this contract, or the application of such provision to any person or circumstances, should be held invalid by a court of competent jurisdiction, the remainder of this contract or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

*Savings clause:* The Union affirm that no provisions contained in its Constitution, Bylaws, Working Rules or Regulations will prevent compliance with the terms of this Agreement. The Association affirms that no provisions con-

-26-

D 00016

tained in its Constitution, Bylaws, Working Rules or Regulations, or other Agreements will prevent compliance with the terms of this Agreement. In the event of any conflict arising, this Agreement will prevail.

SECTION 38: Drug and Alcohol Testing Program is attached under separate cover entitled, *Mechanical Contractors Association of Iowa, Inc. Drug & Alcohol Testing Policy & Procedure*.

SECTION 39. Each Employer agrees to deduct sums as indicated on the Wage Determination Sheet per hour for each hour worked from the wages of those employees who authorize the deduction of this amount as hourly dues, Trade Development Fund and Mechanical Construction Industry Advancement Fund contributions by signing a Dues and Assessments Checkoff authorization form. This amount shall be transmitted to the Local Union on a monthly basis and shall be due in the Union Office on or before the 20th day of the month following the month in which the contributions were earned.

Each Employer agrees to deduct an amount requested by an employee to pay monthly dues and additional assessments not covered by the Dues and Assessments Checkoff Authorization Form. The amount requested must be a consistent amount, and the employee may be limited to two (2) changes in the weekly amount per year at the discretion of the Employer.

SECTION 40. Each Employer agrees to deduct the sum indicated on the Wage Determination Sheet per hour for each hour worked from the wages of those employees who authorize the deduction of this amount as a political action contribution by signing a checkoff authorization form. This amount shall be transmitted to the Local Union on a monthly

- 26 -

basis and shall be due in the Union Office on or before the 20th day of the month following the month in which the contributions were earned. The contributions paid to the Local Union shall be accompanied by a list of names of those employees for whom such deductions have been made and the amount deducted for each such employee. These contributions are voluntary in nature and will be transmitted by the Local Union to an affiliated political action committee.

SECTION 41. This Agreement shall be in full force and effect from June 1, 2006 through May 31, 2009, and it is agreed that no additional claims or demands will be made by either party hereto, during the life of this Agreement.

- 27 -

D 00017

In witness whereof, the parties hereunder have subscribed their names this 1st day of June, 2006 at Des Moines, Iowa, Wa, the undersigned are familiar with this Agreement between members of the Central Iowa Chapter of the Mechanical Contractors Association of Iowa, Inc. of Des Moines, Iowa and vicinity, and the Plumbers and Steamfitters Local Union No. 33 of Des Moines, Iowa, and agree to abide by the conditions set forth therein.

CENTRAL IOWA CHAPTER, MECHANICAL CONTRACTORS ASSOCIATION OF IOWA, INC.

Listing of Member and Nonmember Contractors Represented by Central Iowa Chapter, Mechanical Contractors Association of Iowa, Inc.

Accurate Mechanical Company, Inc.
Air-Con Mechanical Corporation
A.J. Allen Mechanical Contractors, Inc.
Baker Group
Central Iowa Mechanical Company
CI Carlisle Mechanical
Deepmass Mechanical
Foley Company
Gadbury Plumbing & Heating Co.
Harris Companies
Modern Piping
Pike Mechanical
Ragan Mechanical
Stroh Corporation
Thrasher Service Company
The Waldinger Corporation
Wolin and Associates, Inc.

- 28 -

| For the Association | For U.A. Local 33 |
|---|---|
| Edward J. Allen | Thomas F. Gillespie |
| Bernard J. Baker III | Jeffry M. Turner |
| Guy M. Gast | Mark J. Lutter |
| Patrick Miller | John J. Eaton |
| James M. Shaffer | Edwin F. Sullivan |
| Patrick J. Miller | Theodore W. English |
| David R. Stroh | Patrick J. Dorrian |
| James V. Thrasher | Erwin N. Lopez |
| Royce Carlisle | Ricky R. Miller |
| Monty Johnson | Shane M. Benson |

SIGNATORY CONTRACTOR: _____

BY NAME: _____

DATE: _____

- 29 -

## Addendum "A"
### JURISDICTION OF WORK OF JOURNEYMEN AND APPRENTICE EMPLOYEES OF THE PLUMBING & PIPEFITTING INDUSTRY

1. All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, sewerage and vent lines.

2. All piping for water filters, water softeners, water meters, and the setting of it.

3. All cold, hot, and circulating water lines, piping for house pumps, cellar drains, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances, and the handling and setting of the above mentioned equipment.

4. All water service from mains to building including water meters and water meter foundations.

5. All water mains from whatever source including branches and fire hydrants, and so forth.

6. All down spouts and drainage areas, soil pipe, catch basins, manhole drains, gravel basins, storm water sewers, septic tanks, cesspools, water storage tank, etc.

7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and wash rooms, shower stalls, etc.

8. All bathroom, toilet room and shower accessories, i.e., towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.

9. All lawn sprinkler work, including piping, fittings, and lawn sprinkler heads.

– 30 –

10. All sheet lead lining for x-ray rooms, fountains, swimming pools and/or shower stalls, tanks or vats for all purposes and for roof flashings in connection with the Pipefitting industry.

11. All fire standpipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose cabinets and accessories, and all piping for sprinkler work of every description.

12. All block tin coils, carbonic gas piping (for soda fountains and bars), etc.

13. All piping for railing work and racks of every description, whether screwed or welded.

14. All piping for pneumatic vacuum cleaning systems of every description.

15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil or gas used in connection with railway cars, railway motor cars, and railway locomotives.

16. All marine piping, and all piping used in connection with ship building and ship yards.

17. All power plant piping of every description.

18. The handling, assembling, and erection of all economizers, super heaters (regardless of the mode or method of making joints), hangers, and erection of same.

19. All internal and external piping on boilers, heaters, tanks and evaporators, water lets, water backs and water grates, boiler compound equipment, etc.

20. All soot blowers and soot collecting piping systems.

21. The setting, erecting, and piping for all smoke consuming and smoke washing and regulating devices.

22. The setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating,

– 31 –

D 00019

refrigerating, air conditioning, manufacturing, mining, and industrial work.

23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling and brewing plants, heating, ventilating and air-conditioning systems.

24. All piping for artificial gases, natural gases, and holders and equipment for same, chemicals, minerals and by-products and refining of same for any and all purposes.

25. All setting and erecting of all underfed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping, and all accessories and parts of burners and stokers, etc.

26. All ash collecting and conveyor piping systems including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.

27. The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps and mixing devices and piping thereto of every description.

28. The setting, erecting and piping of all cooling units, pumps, reclaiming systems, and appurtenances in connection with transformers, and piping to switches of every description.

29. All fire extinguishing systems and piping, whether by water, steam, gas, or chemical, fire alarm piping, and control tubing, etc.

30. All piping for sterilizing, chemical treatment, deodorizing and all cleaning systems of every description and laundries for all purposes.

31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

32. All piping for power or heating purposes either by water, air, steam, gas, oil, chemicals, or any other method.

33. All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigeration, ice making, humidifying, dehumidifying, dehydrating (by any method), and the charging and testing and servicing of all work after completion.

34. All pneumatic tube work and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.

35. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers, and cooking utensils, etc., of every description.

36. All piping in connection with central distributing filtration treatment stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, settling basins, and aeration basins.

37. All process piping for refining, manufacturing, industrial and shipping purposes of every character and description.

38. All air piping of every description.

39. All temporary piping of every description in connection with building and construction work, excavating and

---

# Plumbers and Steamfitters Local Union No. 33
## *Hiring Hall Rules*

The Collective Bargaining Agreement between Plumbers and Steamfitters Local Union No. 33 and its Employers provides that Employers obtain referrals for journeymen and apprentice plumbers, pipe fitters and steamfitters from Local 33. To provide for an orderly procedure of referrals of plumbers, pipe fitters and steamfitters for employment, to preserve legitimate interest of Employees in their employment status within the area and to eliminate discrimination in employment because of membership or non-membership in the Union, Plumbers and Steamfitters Local Union No. 33 has implemented the following system of referral of journeymen and apprentices for employment.

I.  **GENERAL**

    A. Local 33 shall register and refer journeymen and apprentice plumbers, pipe fitters and steamfitters without discrimination by reason of membership or non-membership in the union, race, gender, national origin, sexual orientation, disability or religion.  The registration and referral shall be in accordance with the procedure below.

    B. A copy of these rules shall be available for inspection during business hours by any bargaining unit member.

    C. Upon request, any individual will be shown his relative position on the out-of-work list.

II.  **REGISTRATION**

    A. The Union shall maintain a register of journeymen and apprentices available for employment established on the following basis:

STATE LEGAL®

EXHIBIT

*B*

A.  As a general principle, plumbers, pipe fitters and steamfitters shall be
    referred on a "first-in, first-out" basis.  They will be registered on the out-of-
    work listed in chronological order.

B.  Subject to the exceptions stated herein, the Local shall refer plumbers, pipe
    fitters and steamfitters in the order of their place on the out-of-work list.

C.  The Local shall refer the first applicant on the out-of-work list possessing the
    bona fide skills and abilities required by the Employer in its request for
    workers.

D.  The following specific rules will affect the priority of referrals:

    1.  A referral will be made based on the Employer's request for a plumber,
        pipe fitter or steamfitter.  In other words, if a request is made for a
        journeymen plumber, then the first journeymen plumber registered on
        the list in chronological order would be the individual referred out.  In
        those situations where there are no individuals on the list fitting the
        specific craft classification requested by the Employer, then, after
        discussion with the Employer, referral can be made of an individual
        with a different craft classification.  However, a pipe fitter will not be
        referred to fill a request for a plumber as long as any plumber is
        available on the out-of-work list; by the same token, no plumber will
        be referred to fulfill a request for pipe fitters as long as a qualified pipe
        fitter is available on the out-of-work list;

    2.  A request for a specific individual on the out-of-work list by a
        particular Employer will be honored provided that the requested
        individual worked for that Employer within the six-month period
        immediately preceding the request;

3

D 00769

3.    The Local will honor a specific request for an individual who has
served as a foreman or a general foreman for a contractor within the
two-year period immediately preceding the request for referral;

4.    The following skills will be considered a basis for prioritization:

    a.    Certified welder

    b.    Welder

    c.    Licenses – city/state

    d.    Control systems proficiency

    e.    Refrigeration proficiency

    f.    HVAC proficiency

    g.    CFC license

    h.    Med Gas license

    i.    Backflow license

    j.    Tube Bender

In other words, if a request is placed by an Employer for a certified
welder, then the first certified welder on the list in chronological order
would be referred out even before journeymen in the same craft
classification who do not have that certification.

5.    Prioritization of referrals will also be based on a registrant's residency in
the geographical area constituting the normal labor market for the
referral.  To be a resident in one of the above normal construction labor
markets means a registrant has maintained his permanent home in that
area for a period of not less than one year.  The normal labor markets
for the various regions covered by the Collective Bargaining Agreement
are as follows:

4

a. Des Moines normal construction labor market shall consist of Dallas, Polk, Jasper, Madison and Warren counties.

b. Sioux City normal construction labor market shall consist of the following counties in Iowa: Lyon, Osceola, Dickinson, Sioux, O'Brien, Clay, Plymouth, Cherokee, Buena Vista, Woodbury, Ida and Sac.  The area also includes Dakota and Dixon Counties in Nebraska, and Union County in South Dakota.

c. Mason City normal construction labor market shall consist of the following counties in Iowa: Cerro Gordo, Floyd, Franklin, Hancock, Mitchell, Winnebago, Worth, Wright.

d. Fort Dodge normal construction labor market shall consist of the following counties in Iowa: Hamilton, Webster, Calhoun, Pocahontas, Humboldt, Palo Alto, Emmet, Kossuth.

D 00771

# WORKING AGREEMENT

BETWEEN

THE CENTRAL IOWA CHAPTER
OF THE
MECHANICAL CONTRACTORS
ASSOCIATION OF
IOWA, INC
of
DES MOINES, IOWA AND VICINITY

AND THE

PLUMBERS AND STEAMFITTERS
LOCAL UNION NO. 33
of
DES MOINES, IOWA

EFFECTIVE DATE:

June 1, 2009 through May 31, 2012

D 00665

# TABLE OF CONTENTS

**Section 1**
Effective Date and Notice for Change ...... 1

**Section 2**
Purpose of Agreement ...... 1

**Section 3**
Arbitration/Grievance ...... 1

**Section 4**
Furnishing Employees ...... 5

**Section 5**
Employer Working With Tools
and Management Rights ...... 6

**Section 6**
Pay Day ...... 7

**Section 7**
Holidays and Overtime Rate of Pay ...... 8

**Section 8**
Regular Work Day, 4 10-Hour Days,
Termination Notice, and Shift Work ...... 8

**Section 9**
Union Geographical Jurisdiction,
Bargaining Unit Recognition, Union Work Jurisdiction,
and Refusal to Work with Unqualified Persons ...... 10

i

**Section 10**
Working Conditions and Safety ...... 12

**Section 11**
Equipment Used in Conjunction
with Work of Trade ...... 13

**Section 12**
Travel, Subsistence, Mileage and Zones ...... 13

**Section 13**
Apprentice Ratio ...... 15

**Section 14**
Length of Apprentice Training ...... 15

**Section 15**
Reporting Pay ...... 15

**Section 16**
Subcontracting Work Covered by Agreement ...... 16

**Section 17**
Supervisory Ratio ...... 16

**Section 18**
Job Access by Business Manager
and/or Business Representative ...... 16

**Section 19**
Minimum Rate of Wages, Supervisory Rates of Pay
and Apprentice Rates of Pay ...... 16

ii

**Section 20**
Tools ........................................................................................................ 18

**Section 21**
Workers' Compensation Insurance, Bond,
Certification of Default, and Standard Bond Form ...... 19

**Section 22**
Employment of Journeymen Whose Permanent
Residence is Outside Jurisdiction ................................ 20

**Section 23**
Appointment of Steward, Duties,
Discharge of Steward .................................................... 20

**Section 24**
Local Pension and National Pension Plans ................ 21

**Section 25**
Fund Deficiency ............................................................ 26

**Section 26**
Education Plan .............................................................. 27

**Section 27**
International Training Fund .......................................... 28

**Section 28**
Vacation Fund/Holiday Fund ...................................... 28

**Section 29**
Health and Welfare Plan .............................................. 29

iii

**Section 30**
Industry Development Fund ........................................ 29

**Section 31**
U.S. Department of Labor Forms ................................ 30

**Section 32**
Picketing and Crossing Picket Line ............................ 30

**Section 33**
Equal Opportunity and Fair Employment .................. 30

**Section 34**
Employees Declining to Commence Work .................. 31

**Section 35**
Pre job Conference ........................................................ 31

**Section 36**
Helpers .......................................................................... 31

**Section 37**
Savings Clause .............................................................. 33

**Section 38**
Drug Testing Program .................................................. 33

**Section 39**
Dues Check-off .............................................................. 34

**Section 40**
UAPEC Check-off .......................................................... 35

iv

D 00667

**Section 41**
UA Standard for Excellence .................................35

**Section 42**
Effective Dates and Length of Contract .................42

Signature Page ..........................................43

Addendum A ...............................................45

# A G R E E M E N T

**SECTION 1a.** This Agreement is made this 1st day of June, 2009, by and between the undersigned Employers, individually hereinafter called the "Contractors" and the Central Iowa Chapter of the Mechanical Contractors Association of Iowa, Inc. of Des Moines, Iowa and vicinity, and the Plumbers and Steamfitters Local Union No. 33, hereinafter referred to as the "Union".

**b.** If any change is contemplated in this Agreement by either party, notice must be given at least sixty (60) days prior to the expiration of the Agreement by registered, return receipt mail.

**SECTION 2.** This Agreement is being entered into by and between the above named parties for the purpose of preventing strikes and lockouts and for the peaceful adjustment of any and all disputes, which may arise, and in the interest of the general public.

**SECTION 3a.** In the event of any dispute between parties of this Agreement as to the rights and/or obligations under this Agreement, the business manager of Local No. 33 and the executive director of the Central Iowa Chapter, MCAI, shall be immediately notified. Every effort possible shall be made by these individuals to settle the dispute before the subsequent provisions of this Article are invoked.

1

D 00668

**b.** In the event that a dispute is not settled under the provisions of Section 3a, it shall be referred to the Joint Grievance and Arbitration Board by registered, return receipt mail.

A Grievance and Arbitration Board consisting of five (5) representatives of the Union and five (5) representatives appointed by the Mechanical Contractors Association of Iowa, Inc., shall constitute the Grievance and Arbitration Board. The secretary of Local Union No. 33 shall be one of the Union members and act as secretary of the Board. One member of the MCAI appointees shall act as chairman of said Board.

**c.** Any employee or Employer covered under this Collective Bargaining Agreement having a grievance or the Union having a grievance shall submit their grievance in writing to the business manager of the Local Union or to the executive director of the MCAI chapter. Either such representative shall then notify the other representative and the Board shall meet within two (2) full working days of said notice.

2

**d.** The aggrieved party filing the grievance shall present its witnesses and evidence to the Board with the charged party having the opportunity to then present its evidence and witnesses. Upon completion of all evidence and hearing, the Board shall go into executive session and make its determination. The Board shall determine all grievances in compliance with the terms and conditions of this Agreement. A decision or award shall require a majority of the Board in favor of said decision and award, and shall require at least one (1) member of the Board voting in favor of the same to be from the Union appointed members, and at least one (1) from the Association appointed members.

**e.** The Board shall render its decision within five (5) working days of the date and time of the completed hearing. Said award, if by a majority, shall be final and binding upon the parties for the term of this Agreement.

3

D 00669

1. In the event a grievance is not satisfactorily settled by the Joint Grievance Committee within five (5) working days after having been first considered by such Joint Grievance and Arbitration Board, the Union or the Association may elect to submit such grievance to impartial arbitration by notifying the other party and the affected Employer in writing to that effect. The Union and the Association may mutually agree to a permanent impartial arbitrator. If they have not agreed to a permanent arbitrator, the Union and the Association shall thereupon select a disinterested person to act as an impartial arbitrator for such grievance. If the Union and the Association cannot agree upon such impartial arbitrator within five (5) working days after a grievance has been referred to impartial arbitration, then such impartial arbitrator shall be selected from a list of five (5) arbitrators to be furnished by the Federal Mediation and Conciliation service; said selection to be effected by the parties alternatively striking names from such list. The person whose name remains on the list after four (4) having been so stricken shall be the impartial arbitrator. Such selection of the impartial arbitrator shall be effected within five (5) days (excluding Saturdays, Sundays, and holidays) after receipt of the list from the Federal Mediation and Conciliation Service.

2. The decision or award of the impartial arbitrator shall be final and binding upon all parties. The impartial arbitrator shall have no authority to add to, subtract from, or modify the terms of this Agreement.

4

f. Each party to this Agreement shall bear the expenses of preparing and presenting its own case. The fees and expenses of the arbitration shall be borne equally by the parties hereto. Any stenographic record or transcript shall be paid for by the party or parties ordering the transcript.

g. Any time limits provided for in the grievance and arbitration procedure set forth in this Article may be waived or extended by mutual agreement between the Union and the Association.

**SECTION 4.** Upon request the Union agrees to furnish plumbers, steamfitters, and pipefitters to the undersigned contractor, public utility corporations, or governing bodies that may have journeymen of either craft steadily employed, or for repair work only.

Contractors shall seek to hire qualified plumbers, steamfitters and pipefitters by calling the Union. Whenever a Contractor requires a plumber, steamfitter or pipefitter on any job, it shall notify the Local Union Office, either in writing or by telephone, stating the type of work to be performed and the number of employees required.

All bargaining unit employees shall be referred to the Contractor by the Union.

5

D 00670

Most of the employees covered by this Agreement are presently members of the Union, and Employers appreciate the value of the representation of their employees by the Union. The Employers, therefore, affirm their sincere belief in the principles of collective bargaining with the Union, and they will make every effort to communicate this affirmation to all employees.

**SECTION 5a.** A contractor, being a member of the United Association, of the undersigned firm will be permitted to work on any and all work for the undersigned firm.

**b. Management Rights:** The management and the direction of the work force, include the right to hire, promote, suspend, discharge, transfer, and layoff because of lack of work. The management of the Employer's business shall include, but not by way of limitation, the right to decide the size, number, and location of construction jobs to be performed and the extent of the work to be performed thereon, etc. The Employer will advise the Union as to the supervisors to whom employees are responsible from time to time. Nothing herein contained shall abridge any of the terms of this Agreement nor shall management discriminate in any way against any of the employees of the company covered by this Agreement.

6

**SECTION 6.** All employees shall receive their pay not later than 4:30 p.m. on designated pay day, and the pay shall be delivered by US Mail to an address of the employee's choosing, or by electronic deposit to a bank account of the employee's choosing, or by check in hand, at the option of the employee. Any employee receiving pay by electronic deposit shall receive an itemized accounting of the pay deposited on his/her behalf no later than 4:30 p.m. on designated pay day, either by US Mail, or by delivery in hand to the employee. Employers shall make paychecks and/or itemized pay accountings available for employees to pick up at the employer's principal place of business before or after working hours on pay day. Customary pay day shall be Friday of each week. The time records for the week shall not be turned into the payroll department of the Employer earlier than 12:00 midnight on Tuesday with the following Friday to be the customary pay day.

In no case shall more than three (3) days pay be held back in any one payroll week.

In the event that an employee does not receive his/her pay on time, or the pay is incorrect, the Employer shall correct such deficiency no later than Tuesday of the week following the Friday pay day (or no later than two full business days after pay day). Any deficiency not corrected by the aforementioned deadline shall result in a penalty of one (1) hour straight-time wages, without fringe benefits, to be paid to the employee by the Employer for every day the correction is late beyond the deadline.

7

D 00671

**SECTION 7.** Sundays, New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, and Christmas will be paid at the rate of double time. The Friday after Thanksgiving is a holiday, but is paid at straight-time if worked. On regular work week days outside the normal working hours and on Saturdays, the pay will be at one and one half times the regular rate. When any of the above named holidays fall on a Saturday, the Friday preceding the holiday will be celebrated as such and the double time rate shall prevail; if the holiday falls on a Sunday, the following Monday will be celebrated as such and the double time rate shall prevail. It is also agreed that no such work will be performed on Labor Day, except to protect life and property.

It is further understood that working hours for the entire period worked are to be considered to have been worked on the day on which the work began, regardless of starting and stopping times before or after midnight.

**SECTION 8a.** Eight (8) hours shall constitute a day's work. The normal work day shall be from 7:00 a.m. to 3:30 p.m. or from 8:00 a.m. to 4:30 p.m. This is to be understood that employees are to put in eight (8) hours actual labor (including pick up time) and to be on the job and ready to work not later than 7:00 a.m. or 8:00 a.m., except when reporting to the shop.

8

**b.** Working hours may be from 7:00 a.m. to 5:30 p.m. if mutually agreeable between the majority of the employees affected and the Employer. Such work shall be paid at the straight time rate Monday through Friday, not to exceed forty (40) hours. When a 10-hour per day, 4-day workweek is established the schedule must be set for either Monday through Thursday or Tuesday through Friday, with all employees working the same schedule, and the schedule will remain intact for the remainder of the project, or until such a time as the normal 8-hour day, 5-day workweek is reestablished. On a Monday through Thursday schedule, Fridays are overtime days with no exceptions. On a Tuesday through Friday schedule, Mondays are overtime days with no exception.

**c.** At the time of termination the Employer shall supply in writing, a notice of termination with reason for such termination to the employee when terminated. A copy of this termination notice shall be forwarded to the business office of this Local Union. Upon termination, employee shall be paid in full.

**d.** Shift work can be performed after or before the regular working hours on jobs where the work cannot be done during regular working hours. Shift premium shall be ten (10) percent above the base rate of pay. A Shift shall be eight (8) hours. No more than one (1) shift can be performed by one (1) employee in any twenty four (24) hour period without overtime pay. This section is not applicable to service work.

9

D 00672

**e.** The employer shall be allowed to establish a family and medical leave policy for all employees covered by this agreement. Such a policy shall conform to state and federal law. The Health and Welfare Board of Trustees will address the issues of health care coverage as they see fit in conformance with the law.

**SECTION 9a.** The Union hereunder is recognized as the bargaining agent for all plumber, steamfitter, and pipefitter employees of the Employer hereunder, within an area which includes the following counties in Iowa: Polk, Boone, Story, Greene, Guthrie, Dallas, Jasper, Poweshiek, Adair, Madison, Warren, Marion, Adams, Union, Clarke, Lucas, Taylor, Ringgold, Decatur, Marshall, Wayne, Hamilton, Webster, Calhoun, Pocahontas, Humboldt, Palo Alto, Emmet, Kossuth, Davis, Wapello, Jefferson, Van Buren, Keokuk, Appanoose, Mahaska, Monroe, Cerro Gordo, Floyd, Franklin, Hancock, Mitchell, Winnebago, Worth, Wright, Lyon, Osceola, Dickinson, Sioux, O'Brien, Clay, Plymouth, Cherokee, Buena Vista, Woodbury, Ida and Sac. The area is also includes Dakota and Dixon Counties in Nebraska, and Union County in South Dakota.

Inasmuch as the Union has submitted proof, and the employer is satisfied, that the Union represents a majority of its employees in the bargaining unit described herein, and the Union has demanded recognition in accordance with Section 9(a) of the NLRA, the Employer recognizes the Union as the exclusive Section 9(a) Collective Bargaining Representative on all present and future job sites within the jurisdiction of the Union, unless and until such time as the Union loses the status as the employees' exclusive representative as the result of an NLRB election request by the employees.

**b.** The Union and Employees hereby recognize the Central Iowa Chapter, Mechanical Contractors Association of Iowa as the sole and exclusive bargaining representative for all its Employer members and for those non member contractors that have furnished the Association with collective bargaining authorizations.

**c.** Both parties of this Agreement will recognize the craft classification of work heretofore mutually understood and agreed upon by the parties as belonging to the plumbers, steamfitters, and pipefitters craft, or that has historically been recognized as such. Such other classifications as have been or may hereafter be awarded to the plumbers, steamfitters, or pipefitters craft by the National Plan for Settlement of Jurisdictional Disputes in the Construction Industry shall be covered by this Agreement. The work jurisdiction of plumbers, steamfitters and pipefitters shall include, but not be limited to, that included in Addendum "A" of this Agreement.

10

11

D 00673

**d.** It shall not be a violation of this contract and shall not be cause for discharge, reprimand or discipline under this contract if any employee or employees of the Employer refuse to work and endure risks and hazards involved or bear additional work involved in working with persons not qualified or skilled in their trade.

**e.** During the term of the Agreement the Union agrees that there will be no strikes, picketing, or work stoppages of any type against signatory contractors. The Employer agrees that there will be no lockout during the term of this Agreement. Nothing in this clause excludes the Union from strike or picketing in the event that an Employer fails to abide by a decision arrived upon through the grievance procedure.

The Union, however, specifically reserves the right to strike an Employer if he/she is declared delinquent in payment of Health and Welfare, Pension, or Apprenticeship contributions, or if an Employer refuses to submit to an audit on behalf of any of the foregoing contributions on either a regular or special audit basis.

**SECTION 10.** The employees shall be aware of the provisions of the Occupational Safety and Health Act of 1970 (and revisions thereto), as well as the Federal Construction Safety Standards and the Right to Know law. The employees shall conform to all directives and provisions of these laws. Noncompliance can be reason for termination. The above requirements shall also apply to the State Occupational Safety and Health Act.

12

**SECTION 11a.** Equipment used on building and construction work in conjunction with the work of the trade, as a time and labor saving device, shall be operated by employees covered by this Agreement.

**b.** In cases where it is practical and cost effective, and at the option of the Employer to limit his or her exposure by installing limited amounts of pipe insulation, it is agreed that this work shall be performed by members of the United Association. This section is in no way designed to dissuade the use of Heat and Frost Insulators and Asbestos Workers for work of a like manner.

**SECTION 12a.** On work outside the jurisdiction set forth in Section 9a, one (1) journeyman shall act as foreman of each individual craft and shall receive the Des Moines scale of wages except where wages are higher, then he/she shall receive the wages paid in that jurisdiction. All work out of the jurisdiction shall comply with the conditions at such place.

**b.** Employees working within a sixty (60) mile radius from the center of Des Moines shall not be allowed traveling allowance or car expenses. Said area to be known as "free zone". An additional zone, which is a radius between sixty (60) and eighty (80) miles shall be established, and shall be known as the "intermediate zone".

13

D 00674

c. Employees sent to work outside the sixty (60) mile radius, and within an eighty (80) mile radius, shall receive per-diem equal to one (1) hour of the straight time journeyman wage rate. Employees sent to work outside the eighty (80) mile radius or outside the geographical jurisdiction of Local #33 shall be reimbursed for actual travel time at the straight time rate of wages and actual amount of expenses incurred.

d. Employees driving their own car outside the sixty (60) mile free zone, shall receive the maximum rate per mile allowed by the Internal Revenue Service either from employee's home or from the Employer's permanent established place of business, whichever is the shorter distance.

The mileage rate shall be paid per mile per day for the employee's transportation. When traveling by other than car, first class transportation shall be furnished by the Employer. Employees shall use no vehicle of any description (unless furnished by the Employer) during working hours.

e. Employers whose permanently established place of business is in any other city or town than Des Moines, in the counties covered in Section 9 of this Agreement, shall use the center of said city or town to arrive at the determinations set forth in this Section.

14

f. A sixty (60) mile free zone and a sixty (60) to eighty (80) mile intermediate zone shall be established around each town in the jurisdiction covered by this Agreement, and each employee with residence in these zones shall be governed by same. The free zone and the intermediate zone for all of Section 12 shall be based on the center of cities and towns covered by this Agreement.

g. Employers whose permanently established place of business is outside the jurisdictional boundary of Local No. 33 shall use the center of Des Moines, Iowa to determine traveling expenses and mileage.

SECTION 13. One (1) apprentice will be allowed to a shop, providing that from one (1) to four (4) journeymen are steadily employed. Two (2) apprentices will be allowed to a shop, providing that five (5) to eight (8) journeymen are steadily employed. There will be no maximum placed on the number of apprentices placed in any shop.

The Union agrees that first year apprentices will be provided to the contractor within one (1) week after request.

SECTION 14. All apprentices shall serve five (5) years and work in compliance with the apprenticeship standards as adopted by the Local Joint Apprenticeship Training Committee.

SECTION 15. Any Employee reporting for work, regardless of the time of day, shall receive no less than two (2) hours pay.

15

**SECTION 16.** In the event the Employer subcontracts any work covered by this jurisdiction of the bargaining agent hereunder, the subcontractor shall work under the terms and conditions of this Agreement and it is the Employer's responsibility to enforce this provision of this Agreement. In the event that the employees of the subcontractor do not work under the terms and conditions of this Agreement, the bargaining agent shall have the right to full economic recourse (including strike) against the Employer.

**SECTION 17.** Any journeyman having from three (3) to ten (10) employees working under his/her supervision shall receive the foreman's rate of pay. An additional foreman shall be provided for every ten (10) employees above the first ten (10), and at such time a general foreman shall be appointed and receive the general foreman's rate of pay. All foremen will be under the direct supervision of a general foreman. Any journeyman acting in the capacity of inspector in his/her craft shall be paid the foreman's rate of pay.

**SECTION 18.** No journeyman or apprentice will be obligated to work on any job where the business manager and/or business representative does not have access at all times.

**SECTION 19.** Effective June 1, 2009, through May 31, 2010, the total wage package shall increase by $0.25 per hour with distribution to be determined. The Wage Determination Sheet will be jointly agreed upon and distributed by M.C.A.I. and Local #33.

The total wages rates for the period effective June 1, 2010, through May 31, 2011, are subject to negotiation if either party gives written notice to the other and to the Federal Mediation and Conciliation Service ("FMCS") at least (60) prior to June 1, 2010.

The wage rates for the period effective June 1, 2011, through May 31, 2012, are subject to negotiations if either party gives written notice to the other and to FMCS as least sixty (60) days prior to June 1, 2011.

Section 9(e) shall not apply for the purposes of this wage reopener and the respective parties shall be permitted all lawful economic recourse with respect to section 19.

**Foreman** - Eight percent (8%) per hour above journeyman base rate of pay.

**General Foreman** - Thirteen percent (13%) per hour above journeyman base rate of pay.

**Apprentices:** Percentage of journeyman minimum rate of pay.

1st six months ........................45%
2nd six months .......................45%
3rd six months .......................50%
4th six months .......................55%
5th six months .......................60%
6th six months .......................65%
7th six months .......................70%

D 00676

8th six months ........................................75%

9th six months ........................................80%

10th six months ........................................85%

**NOTE:** First year apprentices will have no fringe benefit contributions made except for the contribution to the Health and Welfare Fund, fifty (50) percent of the contribution to the U.A. National Pension Fund and a contribution to the Holiday Fund equal to the percentage deduction to the Holiday Fund equal to the percentage rate his/her pay is based upon. After the first year period, apprentices in addition to the Health and Welfare contribution and the fifty (50) percent National Pension contributions, will have contributions made to the Local Pension Fund and a deduction for the Vacation and Holiday Funds equal to the percentage rate his/her pay is based upon. When an apprentice's pay rate exceeds fifty (50) percent, the contribution to the U.A. National Pension Fund shall be equal to the percentage of his/her pay rate.

**SECTION 20.** All tools shall be furnished by the Employer, except the following hand tools shall be furnished one time by the Employer, and maintained by the employee.

1 - Hand box or equivalent

1 - Torpedo level

1 - 25 ft retractable tape

1 - 6' folding rule

1 - Channel lock type pliers

1 - 4 in 1 screwdriver set

1 - 6" Crescent wrench

1 - 1 lb hammer

18

**SECTION 21a.** All contractors must carry Workers' Compensation Insurance, and pay Social Security and Unemployment Insurance regardless of the number of employees employed. The Union and the Contractors shall be allowed to establish a collectively bargained Workers' Compensation Insurance Plan for all employees covered by this Agreement.

**b.** The Employer subject to this Agreement shall furnish a bond from a bonding company, licensed to do business in the state of Iowa, in the amount of twenty five thousand dollars ($25,000), or in the amount deemed appropriate by the Board of Trustees, to guarantee the payments required in this Agreement of Vacation pay, Holiday Pay, Health and Welfare, Pension, Education Fund, Union Dues checkoff, Industry Development Fund, and any other fringe benefits or other monetary obligations except wages paid in hand to the employee.

All Employers employing employees covered by this Bargaining Agreement shall at the execution of this Agreement, furnish satisfactory evidence of the bond to the Local Union and to the Trustees of the Funds. All other Employers to whom this Agreement and provisions hereof shall become applicable shall furnish said bond within fifteen (15) days from the time of employment of any employees covered under the terms and conditions of this Agreement. The bond shall be for the period of this Agreement.

19

Each employee, Trust Fund or other person or entity having a claim against any Employer under the provisions of this Agreement, shall notify the business manager of Local Union No. 33, in writing, of the facts and circumstances of such unpaid obligation. After verification of the indebtedness, he/she shall report same to the respective Trustees who shall process a certification of default to the Surety Company for payment under the terms of the Surety Bond and remit the funds received from the Surety Company to the Trust Accounts of the respective employees.

c. A standard bond form shall be furnished to the Employer employing employees covered by this Bargaining Agreement and said forms shall be furnished by the Local Union.

**SECTION 22.** When working or installing any work within the jurisdiction covered by this Agreement, if employees with permanent residence within the jurisdiction hereto are available, any Employer hereunder shall employ no more than one (1) journeyman whose permanent residence is outside the jurisdiction covered herein.

**SECTION 23.** The first journeyman to go to work with the tools on a job shall be temporary steward thereon, subject to the approval of the business manager. The business manager will inform the contractor in writing the name of the steward. Foreman shall not be allowed to act as steward.

20

The steward on the job shall be allowed a reasonable amount of time to attend to his/her duties during the legal working hours and shall be notified concerning any lay off of employees at the earliest possible time.

When there is work remaining on the job for one or more employees, which the steward on said job is qualified to perform, reduction in force shall not be good cause for discharge of such steward and such steward shall not be discharged without the mutual approval of the business manager and the Employer.

**SECTION 24a. Local Pension Plan:** The Employers subject to this Agreement shall pay into the Pension Plan now in effect for the employees covered under this Agreement, as per the Wage Determination Sheet per hour worked by each of said employees. Such sums shall be paid to the administrator at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

**b. National Pension Plan:** The undersigned Employer and Union agree that the Employer shall make pension contributions to the National Pension Fund in accordance with the terms of this Agreement on behalf of those employees who are covered by the National Pension Fund pursuant to the Collective Bargaining Agreement.

21

1. a) Commencing with the first (1st) day of June, 2009 and for the duration of the current Collective Bargaining Agreement between the parties, and any renewals or extensions thereof, the Employer agrees to make payments to the Plumbers and Pipefitters National Pension Fund for each employee who is in each classification listed below in accordance with the Collective Bargaining Agreement.

| CLASSIFICATION | AMOUNT | EFFECTIVE DATE |
| --- | --- | --- |
| Journeyman | as per Wage Determination Sheet | June 1, 2009 |
| Apprentice | as per Wage Determination Sheet | June 1, 2009 |

Any classification of employees who are excluded from the plan pursuant to good faith bargaining and for whom contributions are not required shall not participate in the Plan. Persons in such excluded classifications shall not be considered "Employees" for purposes of the Plan and this Standard Form of Participation Agreement.

b) The Employer shall make contributions set out in subparagraph 1(a) for each hour, or portion thereof, for which an employee is paid or entitled to payment for performance of duties for the Employer. (Each overtime hour shall be counted as one regular hour for which contributions are payable).

22

c) Contributions set out in subparagraph 1(a) above shall be paid starting with the employee's first day of employment in a job classification covered by the Collective Bargaining Agreement.

d) The Employer shall continue contributions to the Fund for any compensated employees who were previously covered by the Fund as members of the bargaining unit, and who are continuing to perform work of the type covered by the Collective Bargaining Agreement for at least half of their hours with the Employer. It is understood that the Employer may not make contributions on behalf of an employee who owns, or whose spouse owns, 10% or more of the corporation, unless it signs and abides by a participation agreement covering such owner employees. It is also agreed that the Employer shall not make contributions to the Fund on behalf of any employees other than those specified herein.

23

D 00679

The payments to the Pension Fund required above shall be made to the "Plumbers and Pipefitters National Pension Fund", which was established under an Agreement and Declaration of Trust, dated July 23, 1968 and restated December 13, 1978. The Employer, by signing this Standard Form of Participation Agreement, or by signing a Collective Bargaining Agreement providing for participation in the Plumbers and Pipefitters National Pension Fund, agrees to be bound by all the terms and conditions of the restated Agreement and Declaration of Trust. Any Employer so adopting the restated Agreement and Declaration of Trust thereby ratifies, accepts and designates as its representatives the Employer Trustees then serving as such and authorizes said Employer Trustees to designate additional Employer Trustees and successor Employer Trustees in accordance with the terms and conditions thereof, and authorizes the Trustees to adopt amendments to the restated Agreement and Declaration of Trust. The Employer hereby acknowledges receipt of a copy of the restated Agreement and Declaration of Trust in effect when this Agreement is signed.

3. It is agreed that the Pension Plan adopted by the Trustees of the said Pension Fund shall at all times conform with the requirements of the Internal Revenue Code so as to enable the Employer at all times to treat contributions to the Pension Fund as a deduction for income tax purposes.

24

4. It is agreed that all contributions shall be made at such time and in such manner as the Trustees require, and the Trustees shall have the authority to retain an accountant or accounting firm to perform payroll audits of the Employer to determine whether the correct amount of contributions have been made on behalf of all employees covered by the plan.

5. If an Employer fails to make contributions to the Pension Fund within twenty (20) days of the end of the month during which the work was performed, the Union shall have the right to take whatever steps are necessary to secure compliance, any provision of the Collective Bargaining Agreement to the contrary notwithstanding, and the Employer shall be liable for all costs and expenses for collecting the payments due, together with the attorneys' fees, interest on the unpaid contributions of 12% per annum, and liquidated damages of 10% of the unpaid contributions. The Employer's liability for payment hereunder shall not be subject to the grievance or arbitration procedure or the "no-strike" clause provided under the Collective Bargaining Agreement.

6. The parties agree that this Participation Agreement shall be considered a part of the Collective Bargaining Agreement between the undersigned parties.

25

7. The expiration date of the present Collective Bargaining Agreement between the undersigned parties is May 31, 2009. Copies of the Collective Bargaining Agreement and all renewal or extension agreements will be furnished promptly to the Pension Fund Office, and if not consistent with this Participation Agreement, can be used by the Trustees as the basis for termination of participation of the Employer.

**SECTION 25. Fund Deficiency:** Should a determination be made that there exists or will exist an accumulated funding deficiency for a particular trust under the provisions of the Employee Retirement Income Security Act (ERISA), the parties agree to request the Trustees of that particular trust to reduce the benefits in order to correct such under funding providing, however, that if such reduction is not accepted by the Trustees of such trust within thirty (30) days, or would be inadequate to correct the under funding, or is not approved by the Secretary of Labor, the parties hereto shall meet and arrive at an immediate adjustment of the hourly wage rates in this Agreement, in order to correct such funding deficiency in the Local 33 Pension Plan or the Local 33 Health and Welfare Plan. In no event shall the total wage and benefit package be increased for the duration of this contract.

26

**SECTION 26.** The training program will be reviewed by the JATC and a recommendation for any funding change will be submitted to the Union and Contractors by February 1, 2010. If the JATC recommends a funding change, it will be approved effective May 1, 2010. Each and every employer subject to this Agreement shall pay and contribute an amount equal to what the JATC recommends, converted to a percentage not to exceed 3% of the base hourly wage rate for each and every hour worked by each and every helper, apprentice, and journeyman covered by this Agreement into a Trust Fund to be known as the Education Fund. The contribution rate for all helpers to the Education Fund shall be calculated on the base hourly rate for a first six month apprentice. This amount may be increased by the contractors after a review and recommendation from the Joint Apprentice and Training Committee. Said payments shall be subject to the provisions and conditions of said Education Fund. Such sums to be paid to the Trustees at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

27

D 00681

**SECTION 27.** Each and every Employer subject to this Agreement shall pay and contribute $.10 per hour for each member of the bargaining unit for each and every hour worked by each and every helper, apprentice and journeyman covered by this Agreement to the International Training Fund as per the Contribution Collection Agreement set forth for such Fund. Such sums to be paid to the Trustees at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

**SECTION 28.** The Employers subject to this Agreement shall pay to the Plumbers and Steamfitters Vacation Fund per the Wage Determination Sheet for each hour worked by each employee covered by this Agreement and shall pay to the Plumbers and Steamfitters Holiday Fund as per the Wage Determination Sheet for each hour worked by each employee covered by this agreement. Such sums to be paid to the administrator at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such monies were earned. Holidays covered by the Holiday Fund are New Year's Day, Memorial Day, Fourth of July, Labor Day, Thanksgiving Day, the Friday after Thanksgiving Day, and Christmas. When the above named holidays fall on a Saturday, the Friday preceding the holiday will be celebrated as such; if the holiday falls on a Sunday, the following Monday will be celebrated as such.

No employee may receive Vacation Benefits under such plan for any time when Local Union No. 33 is on strike.

**SECTION 29.** The Employers subject to this Agreement shall pay into the Health and Welfare Insurance Plan now in effect, for the employees covered under this Agreement, as per the Wage Determination Sheet for each hour worked by each of said employees. Such sums shall be paid to the administrator at least monthly and shall be due in the Local #33 Fund Office on or before the 20th day of the month following the month such contributions were earned.

**SECTION 30a.** Each and every Employer subject to this Agreement shall pay and contribute as per the Wage Determination Sheet for each and every hour worked by each and every helper, apprentice, and journeyman covered by this Agreement into a Trust Fund to be known as the Industry Development Fund. The contributions shall be reported on forms supplied by, and paid to the Trustees or the administrator monthly not later than the 20th day of the month following each month for which such contributions accrue. All payroll periods ending in the month shall constitute a month's report. The Industry Development Fund shall be administered in accordance with an Agreement and Declaration of Trust and shall be used for the purpose of promoting the good and welfare of the Industry in accordance with the purposes set forth in the declaration.

**b.** It is agreed that no fund shall be used to violate the terms of this Agreement.

**SECTION 31.** The Employers subject to this Agreement shall provide to the Union, on a quarterly basis, "Report of Construction Contractor's Wage Rates" for any project completed by the Employer during the previous quarter having a value of $50,000 or more. Reports will be made on U.S. Department of Labor forms provided by the Union, and they will be due in the Union Office no later than the 20th of the month following the end of each quarter of the calendar year. All reports will be forwarded to the U.S. Department of Labor by the Union to be used for the establishment of the Federal Prevailing Wage Rate.

**SECTION 32.** It shall not be a violation of this contract and shall not be cause for discharge, reprimand, or discipline under this contract if any employee or employees refuse to cross or work behind a picket line or refuse to work on a job where an injunction has been granted prohibiting picketing on such job.

**SECTION 33.** The parties to this Agreement acknowledge that they are subject to state and federal law regarding Equal Opportunity and Fair Employment and therefore, will jointly take the necessary steps to comply with these laws to assure, within the scope of this Agreement, compliance with Equal Opportunity and Fair Employment practice laws and agree that the employment, referral or selection of all employees shall be on the basis of qualifications without regard to age, color, race, sex, religion, national origin or ancestry.

30

**SECTION 34.** As a primary working condition, the employee herein reserve the right to decline to commence work where the signatory contractor has mis-assigned the work covered by the United Association.

**SECTION 35.** It is agreed that in order to avoid necessary disputes as to the above, the Employer agrees to hold a pre job conference with a representative of Local Union No. 33. Such conference shall be held whenever the total value of all work on any job coming under the jurisdiction of members of the United Association exceeds $10,000.

**SECTION 36.** This Section is solely intended to place signatory contractors in a competitive position to successfully bid work that they are not now performing; and will not be implemented in such a manner as to deprive Local Union members of job opportunities.

Assigned helpers: One (1) helper will be allowed to a shop, providing that from one (1) to four (4) journeymen are steadily employed. Two (2) helpers will allowed to a shop, providing that five (5) to eight (8) journeymen are steadily employed. Thereafter, one (1) helper will be allowed for every four (4) journeymen. The Assigned Helpers may be worked on any project at the discretion of the Employer.

31

Project Helpers: On a project by project basis, the business manager and the contractor may or may not enter into more favorable terms and conditions of employment other than those contained in this Working Agreement. This section shall be executed and govern the hiring of employees for a project or for a classification of work where non signatory contractors are anticipated to bid. The contractor shall employ at least one (1) journeyman member of the Local Union for the project or classification of work with the balance of the employees being employed as dictated by the project or classification of work involved, an average of one (1) helper per journeyman can be used.

All helpers will receive wages of from thirty-five percent (35%) to forty-five percent (45%) of the journeymen base rate of pay, and contributions to a Health and Welfare plan approved by the Health and Welfare Trustees. Helpers will also receive contributions to the Education Plan as outlined in Section 26 of this Agreement, and contributions to the Industry Development Fund as outlined in Section 29a. of this Agreement. No other fringe benefits will be paid.

All helpers shall be referred by the Local Union. No helpers will be referred if first year apprentices are available for work. These helpers will come off the Joint Apprentice Committee List, when available. It is required that all helpers be listed on the monthly reporting form.

32

Helpers will not be allowed to perform the following work: pipe welding in any form, laying out of work in any form, testing, balancing, startup, or directing the work force. Helpers must be under the direct supervision of a journeyman at all times while performing work covered under the jurisdiction of this Agreement.

This section shall be in full force and effect for the duration of the project or work involved.

SECTION 37. If any provision of this contract, or the application of such provision to any person or circumstances, should be held invalid by a court of competent jurisdiction, the remainder of this contract or the application of such provision to persons or circumstances other than those to which it is held invalid, shall not be affected thereby.

Savings clause: The Union affirms that no provisions contained in its Constitution, Bylaws, Working Rules or Regulations will prevent compliance with the terms of this Agreement. The Association affirms that no provisions contained in its Constitution, Bylaws, Working Rules or Regulations, or other Agreements will prevent compliance with the terms of this Agreement. In the event of any conflict arising, this Agreement will prevail.

SECTION 38: Drug and Alcohol Testing Program is attached under separate cover entitled, *Mechanical Contractors Association of Iowa, Inc. Drug & Alcohol Testing Policy & Procedure.*

33

D 00684

**SECTION 39.** Each Employer agrees to deduct sums as indicated on the Wage Determination Sheet per hour for each hour worked from the wages of those employees who authorize the deduction of this amount as hourly dues, Trade Development Fund and Mechanical Construction Industry Advancement Fund contributions by signing a Dues and Assessments Checkoff authorization form. This amount shall be transmitted to the Local Union on a monthly basis and shall be due in the Union Office on or before the 20th day of the month following the month in which the contributions were earned.

Each Employer agrees to deduct an amount requested by an employee to pay monthly dues and additional assessments not covered by the Dues and Assessments Checkoff Authorization Form. The amount requested must be a consistent amount, and the employee may be limited to two (2) changes in the weekly amount per year at the discretion of the Employer.

34

**SECTION 40.** Each Employer agrees to deduct the sum indicated on the Wage Determination Sheet per hour for each hour worked from the wages of those employees who authorize the deduction of this amount as a political action contribution by signing a checkoff authorization form. This amount shall be transmitted to the Local Union on a monthly basis and shall be due in the Union Office on or before the 20th day of the month following the month in which the contributions were earned. The contributions paid to the Local Union shall be accompanied by a list of names of those employees for whom such deductions have been made and the amount deducted for each such employee. These contributions are voluntary in nature and will be transmitted by the Local Union to an affiliated political action committee.

**SECTION 41.** The parties to this Agreement agree to abide by the **UA Standards for Excellence**, as amended.

**Member and Local Union Responsibilities:**

To ensure the **UA Standard for Excellence** platform meets and maintains its goals, the Local Union Business Manager, in partnership with his implementation team, including shop stewards and the local membership, shall ensure all members:

- Meet their responsibilities to the employer and their fellow workers by arriving on the job ready to work, every day on time (Absenteeism and tardiness will not be tolerated.)

35

D 00685

- Adhere to the contractual starting and quitting times, including lunch and break periods (Personal cell phones will not be used during the workday with the exception of lunch and break periods.)

- Meet their responsibility as highly skilled craftworkers by providing the required tools as stipulated under the local Collective Bargaining Agreement while respecting those tools and equipment supplied by the employer

- Use and promote the local union and international training and certification systems to the membership so they may continue on the road of lifelong learning, thus ensuring UA craftworkers are the most highly trained and sought after workers

- Meet their responsibility to be fit for duty, ensuring a zero tolerance policy for substance abuse is strictly met

- Be productive and keep inactive time to a minimum

- Meet their contractual responsibility to eliminate disruptions on the job and safely work towards the on-time completion of the project in an auspicious manner

36

- Respect the customers' property (Waste and property destruction, such as graffiti, will not be tolerated.)

- Respect the UA, the customer, client and contractor by dressing in a manner appropriate for our highly skilled and professional craft (Offensive words and symbols on clothing and buttons are not acceptable.)

- Respect and obey employer and customer rules and policies

- Follow safe, reasonable and legitimate management directives

### Employer and Management Responsibilities:

- MCAA/MSCA, PFI, MCPWB, PCA, UAC, and NFSA and their signatory contractors have the responsibility to manage their jobs effectively, and as such have the following responsibilities under the UA Standard for Excellence.

- Replace and return to the referral hall ineffective superintendents, general foremen, foremen, journeyworkers and apprentices

- Provide worker recognition for a job well done

- Ensure that all necessary tools and equipment are readily available to employees

37

D 00686

- Minimize workers' downtime by ensuring blueprints, specifications, job layout instructions and material are readily available in a timely manner

- Provide proper storage for contractor and employee tools

- Provide the necessary leadership and problem-solving skills to jobsite supervision

- Ensure jobsite leadership takes the necessary ownership of mistakes created by management decisions

- Encourage employees, but if necessary, be fair and consistent with discipline

- Create and maintain a safe work environment by providing site specific training, proper equipment and following occupational health and safety guidelines

- Promote and support continued education and training for employees while encouraging career building skills

- Employ an adequate number of properly trained employees to efficiently perform the work in a safe manner, while limiting the number of employees to the work at hand, thereby providing the customer with a key performance indicator of the value of the **UA Standard for Excellence**

38

- Cooperate and communicate with the job steward

- Treat all employees in a respectful and dignified manner, acknowledging their contributions to a successful project

## Problem Resolution Through The UA Standard For Excellence Policy:

Under the UA Standard for Excellence it is understood, that members through the local union, and management through the signatory contractors, have duties and are accountable in achieving successful resolutions.

## Member and Local Union Responsibilities:

- The local union and steward will work with members to correct and solve problems to job performance.

- Job stewards shall be provided with steward training and receive specialized training with regard to the **UA Standard for Excellence.**

- Regular meetings will be held where the job steward along with UA supervision will communicate with the management team regarding job progress, work schedules, and other issues affecting work processes.

- The job steward shall communicate with the members about issues affecting work progress.

39

D 00687

- The business manager or his delegate will conduct regularly scheduled meetings to discuss and resolve issues affecting compliance of the **UA Standard for Excellence** policy.

- The steward and management will attempt to correct such problems with individual members in the workplace.

- Individual members not complying with membership responsibility shall be brought before the Local Union Executive Board, which will address such members' failure to meet their obligation to the local and the UA, up to and including filing charges. The local union's role is to use all available means to correct the compliance problem.

**Employer and Management Responsibilities:**

- Regular meetings will be held where the management team and UA supervision will communicate with the job steward regarding job progress, work schedules, and other issues affecting the work process.

- Management will address concerns brought forth by the steward or UA supervision in a professional and timely manner.

40

- A course of action shall be established to allow the job steward and/or UA supervision to communicate with higher levels of management in the event there's a breakdown with the responsible manager.

- In the event that the employee is unwilling or unable to make the necessary changes, management must make the decision whether the employee is detrimental to the **UA Standard for Excellence** platform and make a decision regarding his/her further employment.

**Additional Jointly Supported Methods Of Problem Resolution:**

- In the event an issue is irresolvable at this level, the local or the contractor may call for contractually established labor management meeting to resolve the issues.

- Weekly job progress meetings should be conducted with job stewards, UA supervision and management.

- The local or the contractor may involve the customer when their input is prudent in finding a solution.

- Foremen, general foremen, superintendents and other management should be educated and certified as leaders in the **UA Standard for Excellence** policy.

41

D 00688

**SECTION 42.** This Agreement shall be in full force and effect from June 1, 2009 through May 31, 2012, and it is agreed that with the exception of opening the Agreement for wage negotiations, no additional claims or demands will be made by either party hereto, during the life of this Agreement.

42

In witness whereof, the parties hereunder have subscribed their names this 1st day of June, 2009 at Des Moines, Iowa. We, the undersigned are familiar with this Agreement between members of the Central Iowa Chapter of the Mechanical Contractors Association of Iowa, Inc. of Des Moines, Iowa and vicinity, and the Plumbers and Steamfitters Local Union No. 33 of Des Moines, Iowa, and agree to abide by the conditions set forth therein.

CENTRAL IOWA CHAPTER, MECHANICAL CONTRACTORS ASSOCIATION OF IOWA, INC.

Listing of Member and Nonmember Contractors Represented by Central Iowa Chapter, Mechanical Contractors Association of Iowa, Inc.

Accurate Mechanical Company, Inc.
Air Con Mechanical Corporation
A.J. Allen Mechanical Contractors, Inc.
Baker Group
Central Iowa Mechanical Company
CI Carlisle Mechanical
Despenas Mechanical
Gadbury Plumbing & Heating Co.
Modern Piping
Pike Mechanical
Stoltz Corporation
Thrasher Service Company
The Waldinger Corporation
Wolin and Associates, Inc.

43

**For the Association**
Edward J. Allen
Bernard J. Baker III
Guy M. Gast
James M. Shaffer, Jr.
Patrick J. Miller
David R. Stroh
James V. Thrasher
Scott A. Carlisle
Monty C. Johnson

**For U.A. Local 33**
Gregory B. Foste
Mark J. Lutter
Shawn E. St. John
Nicholas T. M. Cerrato
Theodore W. English
Patrick J. Dorrian
Erwin N. Lopez
LeRoy H. Thielmann
Shane M. Benson

SIGNATORY CONTRACTOR _____

BY NAME _____

DATE _____

44

## Addendum "A"
## JURISDICTION OF WORK OF JOURNEYMEN AND APPRENTICE EMPLOYEES OF THE PLUMBING & PIPEFITTING INDUSTRY

1. All piping for plumbing, water, waste, floor drains, drain grates, supply, leader, soil pipe, grease traps, sewage and vent lines.

2. All piping for water filters, water softeners, water meters, and the setting of it.

3. All cold, hot, and circulating water lines, piping for house pumps, cellar drains, ejectors, house tanks, pressure tanks, swimming pools, ornamental pools, display fountains, drinking fountains, aquariums, plumbing fixtures and appliances, and the handling and setting of the above mentioned equipment.

4. All water service from mains to building including water meters and water meter foundations.

5. All water mains from whatever source including branches and fire hydrants, and so forth.

6. All down spouts and drainage areas, soil pipe, catch basins, manhole drains, gravel basins, storm water sewers, septic tanks, cesspools, water storage tank, etc.

7. All liquid soap piping, liquid soap tanks, soap valves, and equipment in bath and wash rooms, shower stalls, etc.

8. All bathroom, toilet room and shower accessories, i.e., towel racks, paper holders, glass shelves, hooks, mirrors, cabinets, etc.

9. All lawn sprinkler work, including piping, fittings, and lawn sprinkler heads.

45

D 00690

10. All sheet lead lining for x ray rooms, fountains, swimming pools and/or shower stalls, tanks or vats for all purposes and for roof flashings in connection with the Pipefitting Industry.

11. All fire standpipes, fire pumps, pressure and storage tanks, valves, hose racks, fire hose cabinets and accessories, and all piping for sprinkler work of every description.

12. All block tin coils, carbonic gas piping (for soda fountains and bars), etc.

13. All piping for railing work and racks of every description, whether screwed or welded.

14. All piping for pneumatic vacuum cleaning systems of every description.

15. All piping for hydraulic, vacuum, pneumatic, air, water, steam, oil or gas used in connection with railway cars, railway motor cars, and railway locomotives.

16. All marine piping, and all piping used in connection with ship building and ship yards.

17. All power plant piping of every description.

18. The handling, assembling and erection of all economizers, super heaters (regardless of the mode or method of making joints), hangers, and erection of same.

19. All internal and external piping on boilers, heaters, tanks and evaporators, water jets, water backs and water grates, boiler compound equipment, etc.

20. All soot blowers and soot collecting piping systems.

21. The setting, erecting and piping for all smoke consuming and smoke washing and regulating devices.

46

22. The setting, erecting and piping of instruments, measuring devices, thermostatic controls, gauge boards, and other controls used in connection with power, heating, refrigerating, air conditioning, manufacturing, mining, and industrial work.

23. The setting and erecting of all boiler feeders, water heaters, filters, water softeners, purifiers, condensate equipment, pumps, condensers, coolers, and all piping for same in power houses, distributing and boosting stations, refrigeration, bottling, distilling and brewing plants, heating, ventilating and air conditioning systems.

24. All piping for artificial gases, natural gases, and holders and equipment for same, chemicals, minerals and by products and refining of same for any and all purposes.

25. All setting and erecting of all underfed stokers, fuel burners, and piping, including gas, oil, power fuel, hot and cold air piping, and all accessories and parts of burners and stokers, etc.

26. All ash collecting and conveyor piping systems including all air washing and dust collecting piping and equipment, accessories and appurtenances and regulating devices, etc.

27. The setting and erection of all oil heaters, oil coolers, storage and distribution tanks, transfer pumps and mixing devices and piping thereto of every description.

28. The setting, erecting and piping of all cooling units, pumps, reclaiming systems, and appurtenances in connection with transformers, and piping to switches of every description.

47

D 00691

29. All fire extinguishing systems and piping, whether by water, steam, gas, or chemical, fire alarm piping, and control tubing, etc.

30. All piping for sterilizing, chemical treatment, deodorizing and all cleaning systems of every description and laundries for all purposes.

31. All piping for oil or gasoline tanks, gravity and pressure lubricating and greasing systems, air and hydraulic lifts, etc.

32. All piping for power or heating purposes either by water, air, steam, gas, oil, chemicals, or any other method.

33. All piping, setting and hanging of all units and fixtures for air conditioning, cooling, heating, roof cooling, refrigeration, ice making, humidifying, dehumidifying, dehydrating (by any method), and the charging and testing and servicing of all work after completion.

34. All pneumatic tube work and all piping for carrying systems by vacuum, compressed air, steam, water, or any other method.

35. All piping to stoves, fire grates, blast and heating furnaces, ovens, driers, heaters, oil burners, stokers and boilers, and cooking utensils, etc., of every description.

36. All piping in connection with central distributing filtration treatment stations, waste and sewage disposal plants, central chlorination and chemical treatment work, and all underground supply lines to cooling wells, suction basins, filter basins, setting basins, and aeration basins.

37. All process piping for refining, manufacturing, industrial and shipping purposes of every character and description.

38. All air piping of every description.

39. All temporary piping of every description in connection with building and construction work, excavating and underground construction work.

40. The laying out and cutting of all holes, chases and channels, the setting and erection of bolts, inserts, hangers, brackets, supports, sleeves, thimbles, stands, conduits, and boxes used in connection with the Pipefitting Industry.

41. The handling and setting of boilers, setting of fronts, setting of soot blowers, and attaching of all boiler trimmings.

42. All pipe transportation lines for gas, oil, gasoline, fluids and liquids, water aqueducts, water lines, and booster stations of every description.

43. All acetylene and arc welding, brazing, lead burning, soldered and wiped joints, expanded joints, rolled joints, or any other mode or method of making joints in connection with the Pipefitting Industry.

44. Laying out, cutting, bending and fabricating of all pipe work of every description by whatever mode or method.

45. All methods of stress relieving of all pipe joints made by every mode or method.

46. The assembling and erecting of tanks used for mechanical manufacturing or industrial purposes, to be assembled with bolts, packed, or welded joints.

D 00692

47. The handling and using of all tools and equipment
that may be necessary for the erection and
installation of all work and materials used in the
Pipefitting Industry.

48. The operation, maintenance, repairing, servicing
and dismantling of all work installed by journeyman
employees.

49. All piping for cataracts, cascades, i.e., artificial
water falls, make up water fountains, captured
waters, water towers, cooling towers, and spray
ponds used for industrial, manufacturing,
commercial, or for any other purpose.

50. Piping herein specified means pipe made from
metals, tile, glass, rubber, plastics, wood, or any
other kind of material or product manufactured into
pipe usable in the Pipefitting Industry regardless
of size or shapes.

50

D 00693