IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| JENNY PITTS, | * | |
| | * | 4:10-cv-76 RP-RAW |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| PLUMBERS & STEAMFITTERS | * | |
| LOCAL UNION NO. 33, | * | |
| | * | ORDER |
| Defendant. | * | |
| | * | |

Before the Court is a Motion to Remand, filed by Plaintiff, Jenny Pitts ("Plaintiff"), on March 23, 2010. Clerk's No. 7. Defendant, Plumbers and Steamfitters Local Union Number 33 ("the Union"), filed a resistance to the Motion on April 6, 2010. Clerk's No. 8. Plaintiff did not file a Reply. The Court held a hearing on the matter on May 28, 2010. Clerk's No. 12. Defendant provided the Court with documentary materials and supplemental authority in support of its resistance on June 8, 2010.[1] Clerk's No. 13. The matter is fully submitted.

I. PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff filed the above-captioned action in the Iowa District Court for Polk County, Iowa on January 5, 2010. *See* Clerk's No. 1. In her state court Petition (hereinafter "Complaint"), Plaintiff alleges that she joined the Union as an apprentice in September 2003, and that by December 2008, she had become a journeyman in the Union. Compl. ¶¶ 7-8. Plaintiff and other Union members received job assignments through the Union's hiring hall, that

---

[1] At the May 28, 2010 hearing, the Court requested that Defendant provide it with a copy of the Collective Bargaining Agreement and any relevant related documents, and also extended an invitation to both parties to provide supplemental authority no later than June 8, 2010.

is, employers would request a worker, and the Union would make referrals for employment. *Id*. ¶ 9. Plaintiff contends that throughout her employment, male union members often made sexual or discriminatory remarks toward her, and that employers often assigned her tasks like cleaning and sweeping while less qualified union members were given plumbing and steamfitting assignments. *Id*. ¶ 11. In May 2008, Plaintiff complained to Union Business Agent Ed Sullivan ("Sullivan"), that a Waldinger Corporation foreman repeatedly "attributed Plaintiff's successful career as a plumber and steamfitter to her 'boobs' and assigned her tasks beneath her qualifications, while giving plumb assignments to less qualified men." *Id*. ¶ 13. Sullivan "simply placated Plaintiff, telling her not to worry about it, that she was doing just fine, and that everyone at Waldinger loved her." *Id*. ¶ 14. According to Plaintiff, the Waldinger foreman continued to harass her, eventually firing her on June 3, 2008 after "falsely claiming [Plaintiff] had refused to perform the tasks he assigned her." *Id*. ¶¶ 15-16. Plaintiff complained to Sullivan and to others at the Union's hiring hall, but "they refused to take any action to protect her." *Id*. at 17. Plaintiff was rehired by Waldinger at a different location, but was terminated after two weeks for a purported "reduction in force." *Id*. ¶ 18.

Plaintiff asserts that on July 3, 2008, she approached Union Business Agent Mark Lutter ("Lutter") about an available job for which she was qualified and certified. *Id*. ¶ 19. Lutter "became upset with Plaintiff," telling her that "certifications don't mean shit," that "Plaintiff was unemployable because she had stuck up for herself and had a big mouth," that it was Plaintiff's own fault she had been laid off, and that she would be "better off working at Dairy Queen." *Id*. ¶¶ 20-21. Plaintiff complained about Lutter's behavior to the Union's Apprenticeship Coordinator, Dave Owens ("Owens"). *Id*. ¶ 22. Owens purportedly told Plaintiff he would

speak to Lutter and get back to her, but he never did. *Id.* ¶ 23. According to Plaintiff's Complaint, the Union "refused to allow her to work," even when certain employers called the hiring hall and specifically requested Plaintiff's services. *Id.* ¶ 24.

In August 2008, Plaintiff was assigned a job at Frebco in Fort Dodge. *Id.* ¶ 25. While working there in January 2009, Plaintiff "was severely sexually harassed by two male union members." *Id.* ¶ 26. Plaintiff complained to the Union's Business Manager, Greg Foshe ("Foshe"), about the harassment on February 17, 2009 and requested to file a sexual harassment complaint against the male union members who had harassed her. *Id.* ¶ 27. According to Plaintiff, neither Foshe nor the Union took any action to protect Plaintiff from further harassment and, in 2009, the Union refused to send her for an assignment in Kansas City, despite the fact that the employer had specifically requested Plaintiff for the job. *Id.* ¶¶ 29-32.

After exhausting her administrative remedies, Plaintiff filed her action against Defendant, asserting a single count of harassment, discrimination, and retaliation under the Iowa Civil Rights Act ("ICRA"). Specifically, Plaintiff's Complaint alleges: 1) she was subjected to a sexually hostile work environment, which persisted even after Plaintiff's repeated complaints to Union managers; and 2) the Union retaliated against Plaintiff by refusing to assign her to jobs, by refusing to take action against union members who harassed her, and by refusing to take actions against union officials who retaliated against Plaintiff for complaining about sexual harassment. *Id.* ¶¶ 34-38. Defendant removed Plaintiff's action to this Court on February 22, 2010. *See* Clerk's No. 1. In its Notice of Removal, Defendant asserts that Plaintiff's state law ICRA claim is wholly preempted by federal labor law, specifically § 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, and § 9(a) of the National

Labor Relations Act ("NLRA"), 29 U.S.C. § 159(a).[2]

## II. LAW AND ANALYSIS

### A. *Standard of Review*

The party removing a case to federal court bears the burden of showing that either diversity or federal subject matter jurisdiction is present on the facts of the Complaint. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Hatridge v. Aetna Cas. & Sur. Co.*, 415 F.2d 809, 814 (8th Cir. 1969); 28 U.S.C. § 1446(a). As noted, Defendant asserts that this Court has federal subject matter jurisdiction over Plaintiff's ICRA claim because Plaintiff's claim is wholly preempted by the LMRA and the NLRA.

"For federal question jurisdiction, the federal question generally must appear on the face of the complaint." *Luecke v. Schnucks Mkts., Inc.*, 85 F.3d 356, 358 (8th Cir. 1996) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)). Clearly, nothing on the face of Plaintiff's Complaint raises a federal question. Nonetheless, "[a]n exception to this rule, often applied in labor cases, holds that when 'an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Id*. (quoting *Caterpillar*, 482 U.S. at 393). "The doctrine of preemption arises from the Supremacy Clause of the Constitution, which requires that state law must give way when it conflicts with or frustrates federal law." *Chapman v. Lab One*, 290 F.3d 620, 624 (8th Cir. 2004) (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658,

---

[2] The Union also asserts that Plaintiff's action is preempted by § 502(e) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. Because the Court concludes *infra* that Plaintiff's claims are preempted by the LMRA and the NLRA, however, the Court sees no need to address the ERISA preemption claim.

663 (1993)). "As such, 'complete preemption' of a state-law cause of action provides a basis for removal of an action to federal court." *Id.*; *see also Caterpillar*, 482 U.S. at 393-94 (recognizing the complete preemption doctrine in labor cases involving state law claims preempted by § 301(a) of the LMRA). Similarly, a federal court may properly exercise jurisdiction over a claim that could originally have been brought in federal court, even if concurrent jurisdiction in state court is appropriate. *See* 28 U.S.C. § 1441(b) (permitting a party to remove to federal court any civil action over "which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States").

B.  *LMRA Preemption*

After careful consideration, the Court finds that Plaintiff's Motion to Remand must be denied because Defendant has sustained its burden to show that Plaintiff's Complaint contains allegations of wrongdoing by Defendant that are preempted by the LMRA. *See Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir. 1996) ("Only those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions, but the presence of even one federal claim gives the defendant the right to remove the entire case to federal court."). Section 301(a) of the LMRA provides, in part, that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect of the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). "The Supreme Court has held that federal law exclusively governs suits for breach of a CBA and that 'the pre-emptive force of section 301 extends beyond state-law contract actions.'" *Williams v. Nat'l Football League*, 582 F.3d 863, 873-74 (8th Cir. 2009) (citing *Textile Workers Union v.*

<p>*Lincoln Mills*, 353 U.S. 448, 456 (1957) and quoting *United Steelworkers v. Rawson*, 495 U.S. 362, 369 (1990)). Thus, § 301 completely preempts state law claims founded "directly on rights created by collective-bargaining agreements ["CBAs"] and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar*, 482 U.S. at 394 (quoting *Elec. Workers v. Hechler*, 481 U.S. 851, 859, n.3 (1987)). Thus, "[w]here a state law claim is based on a collective bargaining agreement or is 'inextricably intertwined' with the contents of a collective bargaining agreement, the claim is subject to § 301(a) preemption." *Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 799 (8th Cir. 1998) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985)). The Eighth Circuit has instructed that, in applying the § 301 preemption doctrine, courts must begin with "'the claim itself,' and apply a two-step approach in order to determine if the claim is sufficiently 'independent' to survive section 301 preemption." *Williams*, 582 F.3d at 874 (quoting *Trustees of the Twin City Bricklayers Fringe Benefit Funds v. Superior Waterproofing, Inc.*, 450 F.3d 324, 331 (8th Cir. 2006) and *Bogan v. Gen. Motors Corp.*, 500 F.3d 828, 832 (8th Cir. 2007)).</p>

> First, a "state-law claim is preempted if it is 'based on' [a] . . . provision of the CBA[,]" meaning that "[t]he CBA provision at issue" actually sets forth the right upon which the claim is based. [*Bogan*, 500 F.3d at 832]. Second, section 301 preemption applies where a state-law claim "is 'dependent upon an analysis' of the relevant CBA," meaning that the plaintiff's state-law claim requires interpretation of a provision of the CBA. *Id.*

*Williams*, 582 F.3d at 874.

It is important to note that "[p]reemption under section 301 will not apply . . . in all instances in which a collective bargaining agreement is present. Where a state-law remedy is independent of a collective bargaining agreement in the sense that resolution of the state-law

claim does not require construing the collective bargaining agreement, preemption is inapplicable." *Johnson v. Anheuser Busch, Inc.*, 876 F.2d 620, 623 (8th Cir. 1989) (citing *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399 (1988)). "This principle applies even if analysis of the same set of facts would be required to resolve a dispute arising directly under the collective bargaining agreement or a dispute arising under state tort law." *Id.* (citing *Lingle*, 486 U.S. at 407).

    According to Plaintiff's Complaint, the Union "operated as a hiring hall, referring union members for employment upon a request of an employer. Plaintiff and other union members received job assignments from Defendant."[3] Compl. ¶ 9. Plaintiff further contends that Defendant unlawfully discriminated against her by, amongst other things, "[r]efusing to assign her to available employment for which she was qualified" and by "[r]efusing to assign her to jobs for which she was specifically requested." *Id.* ¶ 37. Defendant argues that, to prove that the Union discriminated against her by failing to refer or assign her for work, Plaintiff will necessarily be required to prove that she had a right to the specific referrals in question. Def.'s Br. at 12. "Plaintiff cannot establish her right to the job referrals in question, however, without reference to the referral rules and practices that form part of the applicable [CBA]." *Id.* at 12-13. According to the Union, since Plaintiff's referral rights "arise solely pursuant to and in

---

[3] Defendant's Notice of Removal likewise provides that the "Union operates a hiring hall, which is available to any employer signatory to a [CBA] with the Union." Notice of Removal ¶ 12. According to Defendant, "signatory employers who have a need for workers may request a referral from the Union of persons on the Union's out-of-work list." *Id.* "In accordance with federal labor law, the union's out-of-work list is available to qualified members and nonmembers alike who desire to work for signatory contractors." *Id* "The hiring hall is operated by the Union pursuant to and in accordance with the written rules and/or other practices that are terms of the parties' [CBA]." *Id.*

accordance with the terms of the [CBA]," her claim for relief is preempted under both steps of the two-step preemption approach. *Id*. at 13. That is, Plaintiff's claim "is founded upon rights created by a CBA," as required by the first step, and it is also "substantially dependent upon an analysis of the terms of a CBA," as required by the second step. *Id*. at 13. The Court agrees.

To demonstrate that the Union violated Iowa discrimination law by refusing to assign or refer her for work,[4] Plaintiff would necessarily be required to demonstrate that she suffered an adverse employment action under circumstances giving rising to an inference of discrimination. *See*, *e.g.*, *Smidt v. Porter*, 695 N.W.2d 9, 14 (Iowa 2005); *Farmland Foods, Inc. v. Dubuque Human Rights Comm'n*, 672 N.W.2d 733, 741 n.1 (Iowa 2003). In this case, therefore, Plaintiff would need to proffer facts that would demonstrate she was qualified for or otherwise eligible for the referral in question, and that the decision to deny her the referral was based on her gender, rather than for some other legitimate, nondiscriminatory reason. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (describing the burden-shifting framework applicable to claims of employment discrimination). The difficultly with Plaintiff's proof of the requisite factors, however, is that Plaintiff's right to *any* job referral from the Union arises exclusively from Section 4 of the CBA, which provides:

> **SECTION 4**.  Upon request the Union agrees to furnish plumbers, steamfitters, and pipefitters to the undersigned contractor, public utility corporation, or governing bodies that may have journeymen of either craft steadily employed, or for repair work only.

---

[4] Defendant's LMRA argument only discusses Plaintiff's claims regarding discrimination by the Union in making referrals, not Plaintiff's claims that the Union failed to take action when Plaintiff complained of harassment. Accordingly, the Court's findings under the LMRA are limited to Plaintiff's referral claims. Regardless, preemption of even a portion of the Plaintiff's assertions would warrant the denial of Plaintiff's Motion to Remand.

> Contractors shall seek to hire qualified plumbers, steamfitters and pipefitters by calling the Union. Whenever a Contractor requires a plumber, steamfitter or pipefitter on any job, it shall notify the Local Union Office, either in writing or by telephone, stating the type of work to be performed and the number of employees required.
>
> All bargaining unit employees shall be referred to the Contractor by the Union.

CBA at 4 (effective June 1, 2006 through May 31, 2009). *See Williams*, 582 F.3d at 874 (stating that a "state-law claim is preempted if it is 'based on' [a] ... provision of the CBA[,]" meaning that "[t]he CBA provision at issue" actually sets forth the right upon which the claim is based).

Also significant in the context of this case is the fact that the Union maintains "Hiring Hall Rules," which provide detailed procedures governing how union members are referred for employment. *See generally* Clerk's No. 13 (Hiring Hall Rules). The Hiring Hall Rules provide, amongst other things, that all union members will be referred on a "first-in, first-out" basis, and that priority of referrals may be affected by such factors as craft classification, recent working status of requested employees, and residency in the labor market where the referral is requested. *Id*. Though the Hiring Hall Rules are not contained within the four corners of the CBA, it is well settled that "to interpret [a CBA] it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements." *Transportation-Commc'n Employees Union v. Union Pac. R.R. Co.*, 385 U.S. 157, 161 (1966). Thus, in this case, to demonstrate that she suffered an adverse employment action by not receiving referrals, the Court will necessarily have to examine and interpret the CBA and the practices, usages, and customs associated with the CBA, including the Hiring Hall Rules, to determine if Plaintiff was qualified for the referrals in question, such that the Union's failure to refer her amounts to an adverse employment action. *See Williams*, 582 F.3d at 874 (applying §

301 preemption where a state-law claim "is 'dependent upon an analysis' of the relevant CBA").

Though § 301 preemption is a complicated question, the Court believes its holding in this case is supported by a recent Eighth Circuit decision, *Holschen v. Int'l Union of Painters & Allied Trades/Painters District Council #2*, 598 F.3d 454 (8th Cir. 2010). In that case, the plaintiff asserted that various union members conspired to "'blackball' him by not referring his name to prospective employers in retaliation" for the plaintiff's support of another individual in a union election. 598 F.3d at 458. The plaintiff sued under state law for interference with a valid business expectancy. *Id*. at 460. The Eighth Circuit found the claim preempted by the LMRA because the plaintiff's claim would require him to show that the union knew of a valid business expectancy between the plaintiff and prospective employers:

> If the CBAs gave Holschen something more than a mere hope of a business relationship with prospective employers, the Union's duty to refrain from interfering with his valid business expectancy would arise from the CBAs. Conversely, if the CBAs did not give rise to a valid business expectancy between Holschen and prospective employers, the Union would have no corresponding duty to refrain from interfering with such an expectancy. Either way, the resolution of Holschen's state law claim would depend upon the meaning of the CBAs, because the CBAs would have to be examined to determine both (1) the extent of the Union's duties to its members and (2) the scope of a union member's contractual or business relationship with prospective employers. Consequently, the district court correctly concluded Holschen's state law claim was preempted under § 301.

*Id.* at 461. Likewise, in the present case, Plaintiff's right to *any* referral from the Union comes solely from the Union's status, memorialized in the CBA, as an exclusive hiring hall for signatory contractors. *See* CBA at 4 ("Contractors *shall* seek to hire qualified plumbers, steamfitters and pipefitters by calling the Union." (emphasis added)). If Plaintiff was not qualified or otherwise eligible to receive a referral in the first instance–-a matter which can only be determined by scrutinizing the CBA and its corresponding rules and practices—then the

Union would have no corresponding duty to refrain from discriminating against Plaintiff in regard to job referrals. Proof of Plaintiff's state law discrimination case is, thus, inextricably intertwined with the contents of the CBA.

B. *NLRA Preemption*

Plaintiff's claims of discrimination are also preempted by the NLRA.[5] Section 9(a) of the NLRA grants labor unions exclusive status as the bargaining representative for its members. *See* 29 U.S.C. § 159(a). Along with this exclusive status comes the judicially created "duty of fair representation" ("DFR"). *See NLRB v. Allis-Chalmers Mfg. Co.*, 388 U.S. 175, 181 (1967) ("It was because the national labor policy vested unions with power to order the relations of employees with their employer that this Court found it necessary to fashion the duty of fair representation."); *Vaca v. Sipes*, 386 U.S. 171, 177 (1967) ("[T]he duty of fair representation has stood as a bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law."). The DFR means that a union, amongst other things, owes a duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca*, 386 U.S. at 177. State law claims are preempted by federal labor laws if they attempt to impose obligations on a union that are subsumed by the DFR. *See, e.g., Condon v. Local 2944, United Steelworkers of Am., AFL-CIO*, 683 F.2d 590, 595 (1st Cir. 1982) (finding that state-imposed duties on a union are preempted unless they "arise wholly

---

[5] While Plaintiff asserts that her ICRA claim is "not preempted by the Labor Management Relations Act or National Labor Relations Act," Pl.'s Br. at 1, the actual arguments in Plaintiff's Brief in Support of Her Motion to Remand focus only on the LMRA, and do not separately address Defendant's contention that Plaintiff's case is wholly and independently preempted by the NLRA. *See* Pl.'s Br. at 1-6 (discussing § 301 of the LMRA and related case law).

outside the ambit of those obligations circumscribed by a union's duty of fair representation under the collective bargaining agreement").

In determining whether Plaintiff's claim under the ICRA raises any rights separate from those secured by the DFR, the Court must focus on the conduct that is at the root of the allegation, not on the legal label affixed to the cause of action under state law.  *See Chaulk Servs., Inc. v. Mass. Comm'n Against Discrimination*, 70 F.3d 1361, 1365 (1st Cir. 1995).  As discussed *supra*, Plaintiff's allegations in this case are that the Union retaliated against her for complaining about sexual harassment by refusing to refer Plaintiff for available jobs, and that the Union generally failed to take action to protect Plaintiff from sexual harassment after she complained about it.  *See* Compl. ¶¶ 34-39.  Plaintiff's assertion that the Union retaliated against her for engaging in protected conduct by refusing to refer her for available jobs is an allegation of "discrimination in hiring hall referrals," which "constitutes an unfair labor practice under §§ 8(b)(1)(A) and 8(b)(2) of the NLRA."  *Farmer v. United Bhd. of Carpenters and Joiners of Am., Local 25*, 430 U.S. 290, 304 n.11 (1977); *see also Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*,  493 U.S. 67 (1989) ("Only because of its status as a Board-certified bargaining representative and by virtue of the power granted to it by the [CBA] does the union gain the ability to refer workers for employment through a hiring hall.  Together with this authority comes the responsibility to exercise it in a nonarbitrary and nondiscriminatory fashion, because the members of the bargaining unit have entrusted the union with the task of representing them.  That the particular function of job referral resembles a task that an employer might perform is of no consequence.  The key is that the union is administering a provision of the contract, something that we have always held is subject to the duty of fair representation.").

Likewise, Plaintiff's allegations that the Union failed to take action to protect her from sexual harassment are preempted because they arise solely "in connection with the [U]nion's activities as representative [and] the discrimination claim cannot be said to 'arise wholly outside the ambit of those obligations circumscribed by a union's duty of fair representation.'" *Snay v. United States Postal Serv.*, 31 F. Supp. 2d 92, 94 (N.D.N.Y. 1998) (quoting *Condon*, 683 F.2d at 595); *see Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 861 (6th Cir.1988) ("Unfair representation . . . is unfair representation whether by reason of sex discrimination, handicap discrimination, or a willful breach of a responsibility to carry out clear terms of a collective bargaining agreement for the benefit of union members and employees."), *cert. denied*, 493 U.S. 964 (1989); *Fenn v. Verizon Commc'ns, Inc.*, No. 08 Civ. 2348, 2010 WL 908918, at *6 (S.D.N.Y. Mar. 15, 2010) (finding plaintiff's claims that union caused or permitted him to suffer severe gender and religious harassment and intimidation were preempted by the NLRA and the LMRA); *E.E.O.C. v. Int'l Bhd. of Electrical Workers Local Union 998*, 343 F. Supp. 2d 655, 657-58 (N.D. Ohio 2004) (finding plaintiff's state law claims of gender discrimination were claims of breach of union's DFR, subject to preemption under the NLRA); *Bergeron v. Henderson*, 52 F. Supp. 2d 149, 153-54 (D. Me. 1999) (finding a plaintiff's claims that the union failed to stop sexual harassment and discrimination against her was an assertion of breach of the DFR which was preempted by the NLRA); *Hess v. B & B Plastics Div. of Metal Cladding, Inc.*, 862 F. Supp. 31, 34 (W.D.N.Y. 1994) (holding that the plaintiff's state law gender discrimination claim against her union was preempted because "Congress . . . intended preemptive coverage of any type of discrimination by a union against its members, at least in the context of the union's duty of fair representation").

III.  CONCLUSION

For the reasons stated herein, the Court finds that Defendant's removal of the present case to federal court was proper and that the Court possesses jurisdiction over Plaintiff's claims. Accordingly, Plaintiff's Motion to Remand (Clerk's No. 7) is DENIED.

IT IS SO ORDERED.

Dated this ___23rd___ day of June, 2010.

_____
ROBERT W. PRATT, Chief Judge
U.S. DISTRICT COURT